Louise **DRAZAN**, Plaintiff-Appellant,

v.

**UNITED STATES of America,** **Defendant-Appellee.**

No. 84–2389.

United States Court of Appeals, Seventh Circuit.

Argued March 5, 1985.
Decided May 20, 1985.

James R. Figliulo, Oran, Wiss & Schultz, Chicago, Ill., for plaintiff-appellant.

Eileen M. Marutzky, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendant-appellee.

Before WOOD, POSNER and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

This suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, was dismissed as barred by the Act's two-year statute of limitations for filing (as a prerequisite to suit) an administrative claim, 28 U.S.C. § 2401(b). The plaintiff has appealed, raising an interesting question about when a cause of action for failure to discover and treat an illness arises and sets the statute of limitations running.

The plaintiff's husband, Bozo Drazan, had for many years received treatment at a Veterans Administration hospital in Chicago for tuberculosis. His disease was in remission but he got annual check-ups and chest x-rays at the hospital. The x-ray that the hospital took in November 1979 revealed the possibility of a small tumor in one of his lungs, and the radiology report suggested that Drazan be given a follow-up examination in a few weeks. No such examination was conducted; and given the posture of the case before us, we must assume (of course without deciding) that the omission was due to the hospital's negligence, as in *Raddatz v. United States*, 750 F.2d 791, 795–96 (9th Cir.1984). When Drazan next reported for his annual chest x-ray, in January 1981, the small tumor was a large and cancerous one, which killed him the next month. In November 1981 his wife requested from the hospital, and

the next month received, her husband's medical records, which revealed the results of the November 1979 examination and the failure to follow it up. In January 1982 she notified the Veterans Administration of her intention to file a claim. The Administration sent her the claim form five months later. She says she filled it out and her lawyer mailed it to the Administration in June 1982; but it was never received. She brought this suit in February 1983, and in September, having learned that the Veterans Administration had not received her earlier mailing, she filed another claim (we defer the question whether the claim was actually filed earlier, maybe as early as July 1983).

■ The district court held that the plaintiff's cause of action accrued in February 1981, when she learned that her husband had (a few days earlier) died of lung cancer. If this is right, she had till February 1983 to file her administrative claim. She tried to file such a claim in June 1982, which would have been in plenty of time even under the district court's view of when her cause of action arose. But the district court was quite right to hold that mailing is not presenting; there must be receipt. See 28 C.F.R. § 14.2(a); 38 C.F.R. § 14.604(b); *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir.1972). The plaintiff offered no evidence to contradict the government's affidavit that her claim was never received.

But if she is right that her cause of action did not arise till December 1981, when she received her husband's medical reports and discovered the results of the x-ray taken in November 1979, then her September 1983 refiling was in time, and the only problem would be that her suit (filed in February 1983) was filed prematurely, because you cannot sue before presenting your administrative claim (you don't have to wait, though, beyond six months, for it to be acted on). 28 U.S.C. § 2675(a). But this problem can easily be solved by allowing her to amend her complaint to change the date to six months

after the refiling of the administrative claim.

■ Thus the critical question is when her cause of action arose. The district court, in holding that it arose in February 1981, relied on *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), where the Supreme Court held that the statute of limitations in federal tort claims cases starts to run when a person knows that he is injured and knows what caused his injury, even if he does not know and has no reason to know that the cause involved negligence. Knowledge of the injury and its cause should stimulate inquiry, and the victim of the injury has two years to discover enough facts to base a claim on. The district court reasoned that when the plaintiff was told that her husband had died of lung cancer, she knew the cause of his death—and of course she knew he was dead. She knew injury and cause, and should have started her inquiry then.

But this is a misinterpretation of *Kubrick*. Kubrick was given a drug in a Veterans Administration hospital and afterward had ear problems which he was told might be due to the drug. So he knew he was injured and knew (though not with certainty) that the drug—a drug administered by the government hospital—was the cause of the injury. He thus knew the government had hurt him, though not necessarily through negligence, just as you would know the government had hurt you if you watched a postal van run over your foot. There is nothing like that in this case. When Mr. Drazan died in February 1981, his wife had (at least so far as the present record shows—an important qualification, to which we shall return) no reason to think that the government had killed him by neglecting to follow up the x-ray examination of 16 months earlier (may have killed him, for of course he might have died anyway even if the cancer had been detected much earlier—lung cancer does not have a high survival rate even when discovered very early). She thought lung cancer had killed him. But it is not an either-or proposition. Lung cancer did kill

him, but maybe only because the government had failed to follow up on the results of an x-ray examination. When there are two causes of an injury, and only one is the government, the knowledge that is required to set the statute of limitations running is knowledge of the government cause, not just of the other cause.

This is trivially obvious in some cases. A postal van knocks a man down, and he strikes his head against the pavement and is killed. No one sees the accident, and the hospital to which the body is taken gives out the cause of death as a fractured skull. That is one cause but the postal service is another; and unless the decedent's survivors know or should know that the postal service caused the decedent's head to hit the pavement, just knowing that he died from a fractured skull does not start the statute of limitations running. Our decision in *Stoleson v. United States*, 629 F.2d 1265 (7th Cir.1980), decided after *Kubrick*, is similar. Mrs. Stoleson had chest pains. The pains were due to a heart condition. What she did not know was that the heart condition was due to a lack of proper insulation in the government factory where she worked. Until she discovered the government link in the causal chain, the statute of limitations did not start to run. Mrs. Drazan knew that her husband had died of lung cancer but not that the lung cancer might have been arrested but for the earlier failure, of which she did not know, to follow up danger signs. *Waits v. United States*, 611 F.2d 550 (5th Cir.1980), is even closer to the present case factually, as it was a case of allegedly negligent failure to treat; and the statute of limitations was held to be tolled until the plaintiff should have realized that the hospital had failed to treat his infection. We hesitate to place great weight on *Waits*, however, because although the court purported to distinguish *Kubrick*, the opinion contains a good deal of language suggesting that the statute of limitations did not begin to run till Waits knew or should have known that he was the victim of *negligent* conduct by the hospital, see 611 F.2d at 552–53, and that is inconsistent with *Kubrick*. Nevertheless

*Stoleson* provides solid support for the position of the plaintiff in the present case.

 The district court's approach, if widely adopted, would have the following rather ghoulish consequence: any time someone suffered pain or illness or death in a Veterans Administration hospital, he (or in the case of death his survivors) would request his hospital records to see whether diagnosis or treatment might have played a role in his distress—whether, that is, the harm might have been "iatrogenic" (doctor-caused). He could not wait till he had reason to think he had suffered any iatrogenic harm; the two years might have run. We do not think such behavior should be encouraged, or that anything in *Kubrick* requires us to encourage it. The cause of which a federal tort claimant must have notice for the statute of limitations to begin to run is the cause that is in the government's control, not a concurrent but independent cause that would not lead anyone to suspect that the government had been responsible for the injury. The notice must be not of harm but of iatrogenic harm, though, as *Kubrick* holds, not necessarily of *negligent* iatrogenic harm.

 We have not said, however, that the statute of limitations begins to run when the government cause is known; that would be inaccurate. It begins to run either when the government cause is known or when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause—whichever comes first. See, e.g., *Stoleson v. United States, supra,* 629 F.2d at 1268; *Raddatz v. United States, supra,* 750 F.2d at 796; *Harrison v. United States,* 708 F.2d 1023, 1027 (5th Cir.1983). That is why we cannot, as the plaintiff asks us to do, decide on this appeal that she filed her claim in time. It depends on when she first had reason to believe that an act or omission by the Veterans Administration hospital had been a cause of her husband's death. To answer this question we would have to know why she

requested her husband's hospital records in November 1981. Suppose she requested them because she needed them in dealing with a life insurance company. Then the revelation that the hospital had failed to follow up a positive x-ray would have been a real bolt from the blue, and her claim was timely. On the other hand suppose that back in February her husband, before he died, had expressed bewilderment that the cancer had grown so rapidly when he was being x-rayed annually, and a doctor had muttered that they must have missed something back in November 1979. If so, then quite possibly when her husband died Mrs. Drazan had reason to believe that the cause (or a cause) was the previous conduct of the Veterans Administration—in which event she waited too long to file her claim.

■ The record is silent on the circumstances surrounding her request in November 1981 for her husband's medical records. This is not surprising since the complaint was dismissed on the government's motion to dismiss, before there was any discovery. The case must be returned to the district court to determine when Mrs. Drazan should have suspected government causality in the death of her husband, and for such further proceedings as may be consistent with that court's determination.

For the guidance of the district court on remand we add two points. First, should the court find that Mrs. Drazan discovered or should have discovered the possibility of iatrogenic harm to her husband sometime between February and December 1981, it may become necessary for the district court to determine whether she actually filed her administrative claim earlier than September 1983. In July, after the suit was brought, the plaintiff furnished the United States Attorney defending the suit with a copy of the required administrative claim. The regulations under the Tort Claims Act provide that if a claim is presented to the wrong federal agency, "that agency shall transfer it forthwith to the appropriate agency," and a "claim shall be presented as required by 28 U.S.C. 2401(b) [the two-year deadline for the ad-

ministrative claim] as of the date it is received by the appropriate agency." 28 C.F.R. § 14.2(b)(1). Whether or when the U.S. Attorney transferred the administrative claim he received in July 1983 to the Veterans Administration is an issue the district court will have to resolve should it become material.

■ Second, although the statute of limitations is of course an affirmative defense, the burden of establishing an exception to the statute of limitations is on the plaintiff. *DeWitt v. United States*, 593 F.2d 276, 281 (7th Cir.1979); *Wollman v. Gross*, 637 F.2d 544, 549 (8th Cir.1980). The government showed that the suit was untimely; it is up to the plaintiff to show that she had no reason to believe that she had been injured by an act or omission by the government.

REVERSED AND REMANDED.