**Elizabeth ERAMO, individually, and as next friend and natural guardian of Matthew Charles Eramo, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 8:97–CV–2675–T–17(C).**

United States District Court,
M.D. Florida,
Tampa Division.

March 15, 2000.

individually, and as next friend and natural guardian of Matthew Charles Eramo, plaintiff.

Steven A. Nisbet, Betsy Chambers, U.S. Attorney's Office, Middle District of Florida, Tampa, FL, for USA, defendant.

## *ORDER DENYING DEFENDANT'S DISPOSITIVE SUMMARY JUDGMENT MOTION AND GRANTING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION*

KOVACHEVICH, District Judge.

This cause is before the Court on the following:

- Dkt. 9 Motion for Partial Summary Judgment

- Dkt. 15 Supplemental Authority

- Dkt. 31 Response

- Dkt. 31 Cross–Motion for Summary Judgment with Exhibits

- Dkt. 32 Response with Exhibits

Plaintiff's action for medical malpractice arises under the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et. seq.*

The parties are noticed that all motions for summary judgment under Federal Rule of Civil Procedure 56 will be considered based upon the standards of review set forth by the United States Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Patricia M. Gibson, Maher, Gibson & Guiley, Orlando, FL, for Elizabeth Eramo,

The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue of material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. at 323–24, 106 S.Ct. 2548 (1986).

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the moving party bears the burden of persuasion at trial, the party must support the summary judgment motion with credible evidence, of the like indicated in Rule 56(c), which would entitle that party to a directed verdict if not controverted.

I

## SUMMARY OF THE FACTS

Plaintiff Elizabeth Eramo filed this suit against Defendant United States of America, alleging negligence and medical malpractice of certain physicians and staff at the Manatee Memorial Hospital in Manatee County, Florida.

Plaintiff's son, Matthew Eramo, was born on May 20, 1994 at Manatee Memorial Hospital. (Dkt.1, Complaint, para.4).

The delivery was complicated and there were signs of fetal distress during Matthew's birth including high blood pressure and respiratory problems. (Exh. C28/15–19). Plaintiff's physician, Dr. Howard Blount, eventually ordered a cesarean section. (Dkt.1, para.4).

Almost immediately after his birth, Matthew did not appear to be developing as well as most healthy infants. (Dkt.1, para.6, 9). Matthew spent twenty days in an incubator before he was finally discharged from there. (Exh. C42/20–22).

Plaintiff has been aware of Matthew's health and developmental problems, and that these problems were the likely result of the difficult birth. (Exh. B, generally). Plaintiff has discussed the potential sources and causes of his problems with her family and Michael's therapists. Plaintiff also considered hiring an attorney to investigate the days surrounding the birth.

II

## DISCUSSION

Because Plaintiff seeks her remedy under the Federal Torts Claim Act (FTCA), Plaintiff's claim is subject to the Act's statute of limitations. Consequently, Plaintiff's claim must be "presented in writing to the appropriate federal agency within two years after such claim accrues ..." 28 U.S.C. 2401(b).

The United States Supreme Court has determined that a claim accrues when the plaintiff knows both of: 1) the existence of the injury and 2) the cause of that injury. *United States v. Kubrick,* 444 U.S. 111, 122–124, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Because Plaintiff served the administrative claim on the Department of Health and Human Services on March 25, 1997, she must have known of both the existence and cause of the injury on or

after March 25, 1995 or her claim will be time barred.

## A. Arguments of the Parties

Defendant argues that Plaintiff's claim is time barred because Plaintiff knew of the injury's existence and cause almost immediately after Matthew's birth, and well before March 25, 1995. Defendant points to exhibits stating that Plaintiff "was afraid that something happened during the delivery" and believed that Matthew's injuries were caused during birth. (Exh. 12/12–17). Plaintiff also considered "looking into legal action" not long after Matthew's birth and long before March 25, 1995. (Exh. G19/5–12). Because Plaintiff also contacted and consulted the Florida Birth–Related Neurological Injury Compensation Association (NICA) about the possibility of relief from that state agency due to Matthew's injuries, Defendant argues that Plaintiff knew of the harm's existence and its cause long before the required date. Defendant also believes that Plaintiff did not exercise due diligence in discovering the cause of her son's injuries. Defendant requests that the Court grant summary judgment because the action is time barred.

Plaintiff argues that Defendant only demonstrates that Plaintiff knew of the existence of Matthew's injury, but not its cause. She also argues that the Court must use a special standard of knowledge of an injury's cause for medical malpractice than for other FTCA cases. In *Diaz v. United States*, 165 F.3d 1337 (11th Cir. 1999), the Eleventh Circuit applied a standard requiring that the plaintiff know that the injury was caused by the doctors involved. Plaintiff urges that while she may have known of Matthew's injuries, she did not know that her doctors caused them. Having known only of the harm's existence, Plaintiff argues that she meets the first prong of the test, but not the second prong requiring knowledge of doctor-

caused injury. Plaintiff contends that she did not acquire this knowledge until well after March 25, 1995.

## B. ANALYSIS

According to the Supreme Court, courts should determine accrual by considering when the plaintiff knew of the injury's existence and its cause. *See Kubrick*, 444 U.S. at 122–124, 100 S.Ct. 352. The exhibits indicate that Plaintiff had personal knowledge of Matthew's early developmental problems, desired occupational and developmental therapy for him to treat the injuries, and generally discussed Matthew's condition with family, friends and certain specialists. Both parties acknowledge that Plaintiff knew of Matthew Eramo's harm. The first prong of the *Kubrick* test has been met, and Plaintiff had knowledge of the injury's existence before March 25, 1995. The Court must now examine the second prong and determine if Plaintiff also had knowledge of the injury's cause.

Plaintiff correctly states that *Diaz* controls the knowledge of cause issue in medical malpractice suits against the government in this circuit. In *Diaz*, the Eleventh Circuit followed *Drazan v. United States*, 762 F.2d 56 (7th Cir.1985), which held that the plaintiff's knowledge of the injury's cause must "be of iatrogenic [doctor-caused] harm" and not just that harm occurred. *Id.* at 59; quoted in *Diaz*, 165 F.3d at 1340. Consequently, the Court must determine whether Plaintiff knew that her doctors were the cause of her son's injuries at birth.

Defendant argues that Plaintiff knew of the labor difficulties and Matthew's fetal distress during and immediately after the delivery. Defendant claims that because of these difficulties, Plaintiff knew that Matthew's injuries were caused at birth. However, Defendant does not give any evidence that before March 25, 1995, Plain-

tiff knew that the cause of these difficulties was related to her doctors. Knowledge of the problematic labor only demonstrates that Plaintiff knew of the injury's existence and that the injury probably occurred during birth. However, the Court requires more than Plaintiff's knowledge that the cause occurred at a certain point in time. *Diaz* requires that Plaintiff know that doctors caused her injury, and not just that the harm occurred on a particular day. Without evidence showing that before March 25, 1995 Plaintiff was aware that her doctor's actions caused Matthew's harm, Defendant has not met the second prong of *Kubrick* and the special *Diaz* requirement for medical malpractice cases.

Similarly, Defendant argues that Dr. Casadonte believed that Matthew's injuries resulted from problems at birth and that Plaintiff was aware of his beliefs. *See* Exh. H26/23–27/1, H37/34–38/13. This only shows Plaintiff's knowledge of when the injury was caused, but not that Plaintiff's physicians caused the harm as *Drazan* and *Diaz* require.

Defendant argues that this case is factually similar to *Price v.. United States,* 775 F.2d 1491 (11th Cir.1985). In *Price,* the plaintiff entered a naval hospital with serious uterine problems. The hospital administered a pregnancy test, and the report indicated that the plaintiff was not pregnant. After the pregnancy test, the doctor recommended a complete abdominal hysterectomy, which was then performed by the doctor at the naval hospital. After the operation, the doctor discovered that the plaintiff had been pregnant, and he informed the plaintiff that she lost the fetus as a result of the hysterectomy he performed. The plaintiff did not investigate the mistake until nearly three years after her injury. The Eleventh Circuit Court of Appeals ruled that the statute of limitations should toll "once the plaintiff discovers her injury is probably attributable to some act of those who treated her."

*Id.* at 1493. The court concluded that because the *Price* plaintiff was aware almost immediately after the hysterectomy (the undisputed cause of the loss of the fetus) of the loss, and because the plaintiff knew that the hysterectomy was performed by her physician, the plaintiff "was on notice that there had probably been an act of negligence." *Id.* at 1494. Therefore, the plaintiff knew or should have known both of her injury and its cause well before she filed her claim.

It should be noted that this Court does not require that Plaintiff know that negligence was involved, only that there was evidence of doctor-related harm. *See Drazan,* 762 F.2d at 59 (stating that the iatrogenic harm, or doctor-caused harm, need not be negligent doctor-caused harm.)

The facts of this case are distinguishable from *Price.* In *Price,* the plaintiff knew that her physicians were responsible for her pregnancy test and her hysterectomy. Only the hospital and the plaintiff's physicians performed these procedures, and nothing else could have caused the *Price* plaintiff's injuries. However, in the present case, the facts do not establish that Plaintiff was aware that her doctors were responsible for Matthew's injuries as opposed to any other cause until Plaintiff gained access to the medical records shortly before she filed her claim. At that time, Plaintiff learned that her physicians' delay in delivering her child by cesarean section may have caused Matthew's injury. Consequently, Plaintiff, unlike the plaintiff in *Price,* did not have knowledge of cause until she reviewed the medical records.

Defendant argues that under *Price* a plaintiff need not know "exactly what mistake or whose mistake" caused the injury, but that, "she had to know that her injury was probably connected to some act of those responsible for her treatment." *Id.* Again, the facts of this case are distinguishable, because the plaintiff in *Price*

knew that her physician's hysterectomy surgery was the cause of the loss of her baby. Hysterectomies do not occur spontaneously. The *Price* plaintiff knew from the moment her physicians informed her that she had been pregnant that her doctor's actions caused her harm. In this case, however, the facts are not so clear. Many things can go awry during a pregnancy and delivery that are beyond a physician's control. Plaintiff did not know her doctors were involved in the harm until she viewed the medical records.

Defendant contends that Plaintiff's early consideration of hiring an attorney shows that Plaintiff knew the injury's cause before March 25, 1995. However, the exhibits show that Plaintiff still had not yet determined that her doctors caused Matthew's harm. The reason Plaintiff considered speaking with an attorney was to gain access to the medical records in order to determine the cause of Matthew's injuries on his date of birth. (Exh. F 79/24–25). Plaintiff did not yet know that her doctors' actions caused Matthew's injury when she wished to consult with an attorney. Moreover, Plaintiff was still seeking to find its cause at that time and that was the only reason she sought an attorney.

■ Defendant further argues that Plaintiff did not exercise due diligence in determining the cause of Matthew's disability. The facts indicate that Plaintiff did speak with many different doctors about Matthew's injuries and attempted to find a cause. *See* Plaintiff's Exhibits N–T. Further, Plaintiff sought additional records from the date of the delivery without success. *See* Ext. F84/12–24. Kim Ross, Plaintiff's patient counselor, stated that receiving the records was an "impossibility" and "was just like not happening." Ext. F84/23–24. Even Plaintiff's attorney's had difficulties receiving the records after requesting them. *See* Plaintiff's Exh. 4.

Again, it was not until Plaintiff viewed these records detailing the physicians' problems with Matthew's delivery that Plaintiff learned of the doctor-related cause of Matthew's injuries. Plaintiff's own efforts to discover the cause of Matthew's injuries only showed Plaintiff that the injuries were caused at or around the birth, and not due to her doctor's actions. Therefore, Plaintiff's discussions with many doctors, and her attempts to gain access to the medical records, demonstrate that Plaintiff did exercise due diligence in attempting to determine the cause of Matthew's injuries.

Plaintiff demonstrates that she did not have knowledge of the doctor-related cause of Matthew's injury until after March 25, 1995, and that it was impossible to know of such cause before that date. First, her doctors never told her in absolute terms the cause of Matthew's developmental problems. (Exh. B57/15–24). Second, Plaintiff did not gain access to medical records until after March 25, 1995. (Dkt. 1 complaint para. 14). Plaintiff did not know the cause nor file the claim until after she considered these records. These facts, and Defendant's failure to demonstrate that Plaintiff knew that Matthew's injuries were caused by her doctors, eliminate any genuine issue as to whether Plaintiff's claim is time barred.

### III

### CONCLUSION

Defendant has not met its burden showing that Plaintiff knew of the doctor-related cause of her son's injury before March 24, 1995. Defendant only shows that Plaintiff knew of the injury's existence, and that it was likely that it was caused during Plaintiff's labor. However, the Court requires more than knowledge of the time of the cause. Defendant must show that Plaintiff knew that her doctor caused the injury, and Defendant has not shown any evidence of this.

Plaintiff has shown, however, that she did not know of the injury's doctor-related cause until after she obtained access to medical records and after March 25, 1995. Consequently, following the *Kubrick* test established by the United States Supreme Court and the knowledge of the doctor-related cause of the injury articulated in *Drazan* and adopted by the Eleventh Circuit in *Diaz*, this action is not time barred. Accordingly, it is

**ORDERED** that Defendant's Motion for Dispositive Summary Judgment (Dkt.31) is **denied.** It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt.9) is **granted.**