144 F.Supp.2d 1128 (2001)
Rosalyn MOTLEY and Chris Stephens, Plaintiffs,
v.
The UNITED STATES of America, d/b/a the People's Health Center, Inc., Defendant.
No. 4:99CV1336 LMB.
United States District Court, E.D. Missouri, Eastern Division.
April 26, 2001.
*1129 Josh P. Tolin, Tolin Law Firm, L.L.C., St. Louis, for Rosalyn Motley, Chris Stephens, plaintiffs.
Nicholas P. Llewellyn, Jane Rund, Office of U.S. Attorney, St. Louis, for United States of America dba People's Health Centers, Inc., defendants.

MEMORANDUM AND ORDER
BLANTON, United States Magistrate Judge.
In this wrongful death action, plaintiffs allege that they received negligent prenatal care from defendant, the People's Health Center (PHC), a federally funded medical facility. The court has jurisdiction over this civil action pursuant to 28 U.S.C. § 2675(a). This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice and *1130 Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636(c).
Currently pending is defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment. (Document Number 19). Relative to this motion, plaintiff has filed a Memorandum in Opposition to Defendant United States of America's Motion to Dismiss or in the Alternative Motion for Summary Judgment. (Id.). Defendant has also filed a Reply Memorandum in Support of its Motion to Dismiss or in the Alternative Motion for Summary Judgment. (Id.). Plaintiff has also filed a Response to Defendant's Reply Memorandum (Doc. No. 24) to which defendant has filed a reply. (Doc. No. 26).

Factual Background
Viewed in a light most favorable to the plaintiff, the record reveals the following facts. Rosalyn Motley first began receiving medical care at PHC in 1991 and beginning July 31, 1995, she received prenatal care as well. On February 7, 1996, Ms. Motley was admitted to Deaconess Hospital in St. Louis, Missouri, a non-federally funded medical facility. At the time she was admitted to Deaconess Hospital, the estimated gestation of her fetus was between 40 to 43 weeks. At this time Ms. Motley related to the medical personnel at Deaconess that she had not felt fetal movement for two days. An examination by medical personnel at Deaconess revealed that she had a non-viable infant.
During the time Ms. Motley was at Deaconess, L. Clypool, D.O., noted in his "progress record" of plaintiff's medical condition that he had discussed the case with the "family" and "[n]umerous concerns over why [Ms. Motley] was not delivered sooner" were voiced by them. See Defendant's Exhibit K. Ms. Motley at this time also had "some belief that the baby should have been delivered sooner." See Def's Ex. H. Plaintiff Motley also at that time had a belief that the medical personnel at PHC could have done something different to prevent the death of her child and that they had done something wrong. Id. Chris Stephens, the father of the infant, also had concerns at this time regarding why the infant had not been born earlier and why PHC had not induced labor earlier. See Def's Ex. I.
Plaintiffs on May 14, 1998, filed a lawsuit related to the death of their child in the Circuit Court of St. Louis against PHC. After the United States of America was substituted as a defendant for PHC in the action, the case was removed to the Federal District Court for the Eastern District of Missouri. Defendant subsequently filed a motion to dismiss arguing that plaintiffs' action should be dismissed for failure of plaintiffs to exhaust their administrative remedies. On September 24, 1998, the United States District Court granted defendant's unopposed Motion to Dismiss. Ms. Motley states that at the time she filed her original action in Missouri state court she did not know that PHC was a federally funded facility or that its employees were federal employees.
After dismissal of their original claim, plaintiffs filed an administrative claim with the Department of Health and Human Services.[1] This claim was denied on June 16, 1999. The present action was filed by plaintiffs on August 24, 1999.

Discussion

I. Standard of Review

If a party seeks to dismiss an action and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b)(6). *1131 Relative to this motion, both parties have submitted documents outside of the pleadings. Consequently, the court will treat defendant's motion as one for summary judgment.
The standards governing a motion for summary judgment are well settled. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant a motion for summary judgment if all of the information before the court demonstrates that there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The burden initially is on the moving party. See Handeen v. Lemaire, 112 F.3d 1339, 1346 (8th Cir.1997). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow the trier of fact to return a verdict for it. See FED. R. CIV. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91. L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

II. Federal Tort Claims Act

Defendant moves to dismiss plaintiffs' action for failing to comply with the statutory requirements under the Federal Tort Claims Act. More specifically, defendant claims that plaintiffs' action should be dismissed because plaintiffs failed to file an administrative claim with the appropriate federal agency, the Department of Health and Human Services, within the two-year statute of limitations required under 28 U.S.C. §§ 2401(b) and 2675(a).
Plaintiffs respond, arguing that the statute of limitations should not bar their action for two reasons. First, plaintiffs argue that the statute of limitations should be equitably tolled because they did not discover the cause of the injury until after the limitations period had expired. Second, plaintiffs argue that their action should not be barred because their failure to timely file an administrative complaint was due to them not knowing that defendant was a federally funded medical facility.
Title 28 U.S.C. § 2401(b) provides, in pertinent part, that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues ... `Because suits against the government are subject to equitable tolling, compliance with this limitations period is not a jurisdictional prerequisite to suing the government.'" Krueger v. Saiki, 19 F.3d 1285, 1286 (8th Cir.1994)(per curiam)(citing Schmidt v. United States, 933 F.2d 639, 640 (8th Cir.1991)). Thus, the burden is on the government to prove, as an affirmative defense, that plaintiffs failed to comply with the limitations period. Id. (citing Slaaten v. United States, 990 F.2d 1038, 1043 n. 5 (8th Cir.1993)).
The issue of when a claim "accrues" for purposes of the Federal Tort Claims Act is a matter of federal law. See Snyder v. United States, 717 F.2d 1193, 1195 (8th Cir.1983). The United States Supreme Court in United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), held that a plaintiff's medical malpractice claim accrues when he learns of the existence and probable cause *1132 of the injury. See Kubrick at 1222, 100 S.Ct. at 359.
The Supreme Court in Kubrick explained the reasoning behind the rule in a passage pertinent to this case:
That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask. If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff.
444 U.S. at 122, 100 S.Ct. at 359.
In the present case on February 7, 1996, the plaintiffs were in possession of the "critical facts" of the injury and who inflicted the injury, which have not changed to this day as far as plaintiffs' complaint is concerned, that their baby was born dead and that PHC was responsible for that death.
The Supreme Court further explained:
A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.
444 U.S. at 123, 100 S.Ct. at 360.
In Snyder v. United States, 717 F.2d at 1195, the Court of Appeals for the Eighth Circuit stated, "[t]he critical issue here is determining the time Snider actually knew, or in the exercise of reasonable diligence should have known the cause and existence of his injury." See also Wehrman v. United States, 830 F.2d 1480, 1483 (8th Cir.1987). To the same effect, Green v. United States, 765 F.2d 105, 108 (7th Cir.1985). The Green case quoted and cited other cases beginning with Drazan v. United States, 762 F.2d 56, 59 (7th Cir. 1985):
It [the statute of limitations] begins to run either when the government cause is known or when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause-whichever comes first. Burgess, 744 F.2d at 773; Jastremski, 737 F.2d at 669; Stoleson v. United States, 629 F.2d at 1268. The rationale underlying this proposition is simply that once "[a] plaintiff [is] ... armed with the facts about the harm done to him, [he] can protect himself by seeking advice in the medical and legal community." Kubrick, 444 U.S. at 123, 100 S.Ct. at 360.
A medical malpractice claim can still accrue even though the plaintiff may be unaware of his legal rights and does not know if any negligence was involved in his potential claim. See Snyder, 717 F.2d at 1195.
In the present case, the evidence establishes that plaintiffs had the requisite knowledge to cause the accrual of their medical malpractice claim in February of 1996, the time when plaintiffs' child was delivered stillborn. The first prong of the Kubrick requirement, that plaintiffs know of the existence of the injury, was established in February of 1996 when Dr. Clypool told plaintiffs that their child was dead. See Defendant's Ex. K at 2. Regarding the second prong of the inquiry, whether plaintiffs knew the probable cause *1133 of their child's death, the evidence also establishes that plaintiffs were aware of the probable cause of the death or at least had sufficient knowledge to protect themselves by seeking advice in the medical and legal community. Kubrick, 444 U.S. at 123, 100 S.Ct. at 360. In Dr. Clypool's progress record from the delivery date, he notes that he discussed the case with the family at this time and that there were "[n]umerous concerns over why [plaintiff] was not delivered sooner." Id. at 4. Ms. Motley confirms these concerns when she stated while being deposed that her grandmother, father and mother all asked the doctor why labor had not been induced earlier. See Def's Ex. H at 2. Ms. Motley also stated that she believed on February 7, 1996, that her baby should have been delivered sooner. Id. Mr. Stephens stated that he had similar concerns at that time. See Def's Ex. I at 2. Furthermore, Ms. Motley stated that on February 7 she had a belief that the medical personnel could have done something different to prevent the death of her baby. See Def's Ex. H at 3. Ms. Motley further stated that on that date she had some belief that defendant had done something wrong. Id. These factual circumstances establish that plaintiffs knew of the existence of the injury to their baby and had knowledge as to the probable cause of that injury, or at least had sufficient knowledge to protect themselves by seeking advice in the medical and legal community. See Brazzell v. United States, 788 F.2d 1352, 1356 (8th Cir.1986)(stating that a plaintiff should be charged with knowledge of her injury when she can ask a doctor about its cause). This is the status of the plaintiffs. See Manko v. United States, 830 F.2d 831, 839 (8th Cir.1987)(stating that when a plaintiff's own allegations establish that a claim accrued more than two years before it was filed, there is no issue for the fact-finder to determine).
Plaintiffs also argue that their action should not be dismissed and their failure to file an administrative action within the limitations period should be excused because they had no knowledge that PHC was a federally funded facility. "The party who is claiming the benefit of an exception to the operation of a statute of limitations bears the burden of showing that he is entitled to it." Wollman v. Gross, 637 F.2d 544, 549 (8th Cir.1980)(citing De Witt v. United States, 593 F.2d 276, 281 (7th Cir.1979)). Ms. Motley states that although she had received medical care at PHC since 1991, she was not aware that its employees were deemed employees of the Federal government, and therefore covered under the protection of the Federal Tort Claims Act, since 1993. See Affidavit of Rosalyn Motley at ¶ 2, Def's Ex. A. Plaintiffs further argue that the status of PHC as a federally funded facility was intentionally hidden from them. See Response to Defendants "Statement of Uncontroverted Material Facts," ¶ 9.
The evidence before the court does not establish that plaintiffs were intentionally deceived as to PHC's being a federally funded facility. As defendant asserts, there is no evidence of any fraudulent or deceitful conduct on the part of defendant in misleading plaintiff as to PHC's status. Cf. Moessmer v. United States, 569 F.Supp. 782, 785 (E.D.Mo.1983)(permitting accrual of claim outside of limitations period due to wrongful concealment of defendant's negligence). Furthermore, plaintiffs' case does not involve "innocent ignorance or ingenuous blunder" of defendant's federal status by plaintiffs such as to excuse her failure to abide by § 2401(b). See Kelley v. United States, 568 F.2d 259, 262 (2nd Cir.1978). Plaintiffs consulted an attorney and filed their original state action within the limitations period. It is a plaintiff's duty to investigate and file her claims in the appropriate *1134 court and to abide by all procedural requirements. Plaintiffs' lack of knowledge regarding defendant's status, absent affirmative action by defendant to intentionally conceal their status as a federally-funded entity, does not create a question of material fact precluding an entry of summary judgment for defendant in this case.
As the Court stated in Kubrick, "for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should [not] receive identical treatment." 444 U.S. at 122, 100 S.Ct. at 359. The Court further stated that "[t]here are others who can tell [plaintiff] if he has been wronged, and he need only ask." Id. As noted earlier, a malpractice claim can still accrue even though a plaintiff may be unaware of his legal rights. Snyder, 717 F.2d at 1195. Plaintiffs' failure to abide by the administrative requirements for claims under the FTCA, while an unfortunate occurrence, was not a result of any action by defendant. Given the legislative purpose of the FTCA to create "an administrative-claims system by which the agency involved could resolve specific claims for specific amounts of money," Manko, 830 F.2d at 831, it is the court's conclusion that plaintiffs' failure to file her claim within the limitations period is dispositive of their case.
The Supreme Court was aware of the unfortunate consequences for plaintiffs which can follow from statutes of limitations. "It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims." Kubrick, 444 U.S. at 125, 100 S.Ct. at 361. On the other hand, these consequences are balanced by defendants' "right to be free of stale claims." 444 U.S. at 117, 100 S.Ct. at 357.
Accordingly,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. No. 19) be granted. A separate Summary Judgment will be entered this date.

NOTICE OF APPEAL
Notice is hereby given that Rosalyn Motley and Chris Stephens (plaintiffs) hereby appeal to the United States Court of Appeals for the Eighth Circuit from the Memorandum and Order granting Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment.
NOTES
[1] Plaintiffs' administrative claim was received on September 18, 1998. See Def's Ex. E.