[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10145

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 19, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-01163-CV-J-32-HTS

CYNTHIA JONES,
as natural mother and guardian of B.L., a minor,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 19, 2008)**

Before DUBINA, HULL and FAY, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Cynthia Jones, on behalf of her minor son, B.L, appeals the district court's grant of summary judgment in favor of the defendant-appellee United States ("the government").  After review and oral argument, we affirm.[1]

## I.  Background

Jones, on behalf of her minor son, filed a medical malpractice action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.  Jones's complaint contended that Dr. Sujith Kalmadi provided negligent care to B.L. on November 21, 2001, the day of B.L.'s birth at the Putnam Community Medical Center ("the hospital").  Dr. Kalmadi was on call and was the pediatrician who cared for B.L. at birth.  Dr. Kalmadi was an employee of the Family Medical and Dental Centers of Palatka, Florida ("FMDC"), a federally supported health center.  Jones had no prior contact with Dr. Kalmadi.

Jones is, and was at all material times, a carrier of the Hepatitis B ("HB") virus.  The hospital chart noted Jones had HB.  Infants exposed to HB during pregnancy, like B.L. was from Jones, should receive the HB immune globulin and HB vaccination at birth, followed by two additional doses several months later.

---

[1]We review a district court's order granting summary judgment de novo, considering the evidence in the light most favorable to the party opposing the motion.  See Patrick v. Floyd Med. Ctr., 201 F.3d 1313, 1315 (11th Cir. 2000).

However, Dr. Kalmadi failed to administer the HB immune globulin at B.L.'s birth and the HB vaccination within twelve hours of birth.

On January 2, 2002, Jones learned that B.L. had not received either the HB immune globulin or the HB vaccination and that B.L. possibly could contract HB as a result.[2]  On May 30, 2002, Jones began searching for a lawyer to discuss the hospital's alleged negligence.  By October 2, 2002, Jones had been advised that B.L. had contracted HB.

On November 21, 2002, Jones met with Sidney M. Nowell, her first attorney in this matter.  Nowell asked Jones to obtain copies of the pertinent medical records from the hospital.  Jones needed until January 21, 2003, to gather enough money to pay for the records and to find transportation to the hospital to retrieve them.  On January 21, 2003, Jones picked up and mailed the hospital records to Nowell.  The records contained Dr. Kalmadi's name eighteen times in both signature and type-stamp form.  For example, B.L.'s "Admission Sheet" states in typewritten print that "Kalmadi, Sujith R." was B.L.'s "Attending Physician," "Prim Care Physician," and "Admitting Physician."

By May 5, 2003, when Jones had not heard anything from Nowell, she became worried.  Jones asked her health department counselor to contact Nowell on her behalf.  Her counselor tried to reach Nowell at least three times throughout

_____

[2]On January 3, 2002, and again on February 4, 2002, B.L. received HB vaccinations.

3

May 2003 without success.  On June 9, 2003, Nowell told Jones's counselor that he had retained someone to review the hospital records that Jones sent him in January.  As of September 3, 2003, Jones had heard nothing more from Nowell.

At some point in late September 2004, Nowell referred Jones to Robert L. McLeod II, her current attorney.  On October 6, 2004, McLeod notified Dr. Kalmadi and the hospital that Jones intended to pursue a medical malpractice action against them, challenging the care B.L. had received after his birth.  On November 1, 2004, Dr. Kalmadi advised McLeod that, at the time he treated B.L: (1) he had been employed by FMDC; and (2) he was "covered by the Federal Torts Claim Act [sic] for medical malpractice."

On January 26, 2005, the United States Department of Health and Human Services ("DHHS") received Jones's administrative claim against the government pursuant to the FTCA.  Jones's complaint alleged that Dr. Kalmadi negligently failed to administer the HB immune globulin and HB vaccination to B.L. immediately after his birth, which resulted in B.L. contracting the HB virus.  On July 11, 2005, DHHS denied the claim as time-barred under the FTCA's two-year statute of limitations.

On November 9, 2005, Jones filed a civil complaint in the district court. The government's answer alleged, among other things, that Jones had failed to commence this FTCA action within the two-year statute of limitations period.  The

4

parties agreed to restrict discovery to this preliminary but potentially dispositive issue. Thereafter, the parties filed cross-motions for summary judgment on this issue. In the same order, the district court (1) granted the government's summary judgment motion, concluding that Jones's cause of action was time-barred and (2) denied Jones's motion for partial summary judgment.

Jones timely appealed.

## II. Discussion

### A. Relevant Precedent

The FTCA provides, in relevant part, "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). The general rule is that a claim under the FTCA accrues at the time of the plaintiff's injury. United States v. Kubrick, 444 U.S. 111, 120, 100 S. Ct. 352, 358 (1979); Diaz v. United States, 165 F.3d 1337, 1339 (11th Cir. 1999); Price v. United States, 775 F.2d 1491, 1493 (11th Cir. 1985).

In medical malpractice cases, the general rule is modified because injuries sometimes take time to manifest themselves. Diaz, 165 F.3d at 1339; Price, 775 F.2d at 1493. Under the modified rule in medical malpractice cases, a claim under the FTCA "'accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the

5

defendant.'" Diaz, 165 F.3d at 1339 (quoting Price, 775 F.2d at 1494).

Knowledge of the injury and its cause should stimulate inquiry, and the victim of

the injury has two years to discover enough facts on which to base a claim. See

Kubrick, 444 U.S. at 120.

Further, in Diaz, we addressed when a claim accrues in cases involving

multiple causes of injury. In Diaz, we adopted this rule from the Seventh Circuit's

decision in Drazan v. United States, 762 F.2d 56 (7th Cir. 1985),[3] stating: "We

agree that, '[w]hen there are two causes of an injury, and only one is the

government, the knowledge that is required to set the statute of limitations running

is knowledge of the government cause, not just of the other cause.'" Diaz, 165

F.3d at 1340 (quoting Drazan, 762 F.2d at 59) (alteration in original).

---

[3]In Drazan, Bozo Drazan, the plaintiff's husband, received treatment for tuberculosis at a Veterans Administration hospital. 762 F.2d at 57. A November 1979 x-ray revealed the possibility of a small tumor in one lung. Id. The radiology report suggested that Drazan have a follow-up examination, but none occurred. Id. By the time of Drazan's next annual x-ray, the tumor was large and cancerous. Id. Drazan died a month later. Id. The plaintiff did not receive the medical records that revealed the results of the November 1979 x-ray until December 1981, and she mailed the Veterans Administration a claim form in June 1982. Id. at 57-58.

In holding that the plaintiff's cause of action did not arise until December 1981, when she received her husband's medical reports and discovered the results of the November 1979 x-ray, the Seventh Circuit concluded that "[w]hen Mr. Drazan died in February 1981, his wife had . . . no reason to think that the government had killed him by neglecting to follow up the x-ray examination of 16 months earlier . . . . She thought lung cancer alone had killed him." Id. at 58.

The Seventh Circuit distinguished Drazan from Kubrick, where the plaintiff was given a drug in a Veterans Administration hospital and afterward had ear problems that he was told might be due to the drug. Id. at 58. Unlike in Drazan, where the plaintiff, Mrs. Drazan, had no reason to think the injury might have been iatrogenic, the Kubrick plaintiff knew the source of his harm. Id.

Applying the <u>Drazan</u> rule in <u>Diaz</u>, we concluded that the diligence-discovery rule applied and that the district court had used the incorrect rule of accrual. <u>Diaz</u>, 165 F.3d at 1340-41. In <u>Diaz</u>, the plaintiff's husband, a prisoner, committed suicide in March 1994, shortly after being examined by psychology services staff members. <u>Id.</u> at 1338. The staff members noted that Diaz had lost a considerable amount of weight and had been suffering from anxiety, headaches, and insomnia. <u>Id.</u> Despite their concerns, Diaz was housed alone without a suicide watch. <u>Id.</u> After he hung himself, prison officials told Diaz's wife that they had no warning that he might kill himself. <u>Id.</u> Only in October 1995 did the plaintiff receive a written report indicating that her husband had been examined prior to his suicide. <u>Id.</u> at 1339. She submitted an administrative claim in April 1996. <u>Id.</u> Applying the rule adopted from <u>Drazan</u>, we concluded the plaintiff's claim accrued "when the plaintiff kn[e]w[], or exercising reasonable diligence should [have] know[n], both of the decedent's death and its connection with the government." <u>Id.</u> at 1340. We remanded the case to the district court to determine when this plaintiff knew or should have known that her husband was evaluated by psychological services staff members. <u>Id.</u> at 1340-41.

The <u>Drazan</u> and <u>Diaz</u> cases refer to knowledge of a "government cause" simply because the government was the defendant in those cases. Neither <u>Drazan</u> nor <u>Diaz</u> upset the rule that ignorance as to the alleged tortfeasor's *employer* does

7

not toll the statute of limitations. The "knowledge of the government cause" requirement simply clarified that a plaintiff must know of the cause attributed to the defendant for the cause of action to accrue. It does not require that a plaintiff know the defendant is a government employee for the cause of action to accrue. See Garza v. U.S. Bureau of Prisons, 284 F.3d 930, 935 (8th Cir. 2002) ("[T]he statute of limitations under the FTCA 'does not wait until a plaintiff is aware that an alleged tort-feasor is a federal employee.'" (quoting Gould v. U.S. Dep't of Health & Human Servs., 905 F.2d 738, 745 (4th Cir. 1990))).

**B. Jones's Case**

Turning to this case, Jones gave notice of her administrative claim on January 26, 2005, and thus acknowledges that her claim must have accrued after January 26, 2003 or her claim will be time-barred. Just weeks after B.L.'s birth in 2001, Jones learned that the doctor at the hospital failed to administer the HB immune globulin and HB vaccination at B.L.'s birth. Then, on October 2, 2002, Jones learned of the actual injury to her child. On this date, social services counselors called her and told her that test results had shown definitively that B.L. had contracted HB. On January 21, 2003, Jones received hospital records describing Dr. Kalmadi's involvement in the process. These hospital records repeatedly mentioned Dr. Kalmadi's prominent role in caring for B.L. during the time surrounding his birth. Because Jones knew of the doctor's failure to give the

8

HB immune globulin and HB vaccine even before she knew of the injury, Jones's claim arguably accrued on October 2, 2002. However, we choose not to focus on the October 2 date because it is certain that Jones's claim accrued as of January 21, 2003, which is also more than two years before she filed her claim.[4]

Therefore, the district court's grant of summary judgment in favor of the government is **AFFIRMED.**

---

[4]We need not resolve whether equitable tolling may apply to claims against the government under the FTCA because Jones failed to raise that issue on appeal. In any event, Jones did not satisfy the requirement to trigger equitable tolling. See Arce v. Garcia, 434 F.3d 1254, 1261 (11th Cir. 2006) (indicating that equitable tolling is appropriate only when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence).