**Doris SLAATEN, Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

**No. 92–1622.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1992.

Decided April 8, 1993.

Rehearing and Rehearing En Banc
Denied June 14, 1993.

that Slaaten's suit was barred by the Federal Tort Claims Act two-year statute of limitations. 28 U.S.C.A. § 2401(b) (Supp. 1992). Slaaten argues that she complied with the two-year statute of limitations because her claim did not accrue until September 19, 1989, when an Interior Board of Land Appeals decision, reversing a long-standing government position and holding that the United States had no claim to the royalties, became final. We conclude that Slaaten complied with the two-year statute of limitations. Accordingly, we reverse and remand for further proceedings.

On May 25, 1937, Doris Slaaten's parents conveyed 160 acres located in North Dakota to the United States. The deed contained a mineral reservation in favor of the Slaatens, limited to twenty-five years with the option to extend the reservation. The deed also provided that the reservation would expire on November 4, 1961, and that any extension of the mineral rights would be limited to an area of twenty-five acres of land surrounding each well or mine that was producing at the time the right terminated.

In 1948, Maude Slaaten, Doris Slaaten's mother, leased the mineral interest to Thomas Dorough, who assigned the lease to Texaco. Texaco constructed two oil and gas wells on the property. In August 1961, Texaco and the United States interpreted the mineral reservation right in the deed to mean that the United States owned the mineral interest in all but the twenty-five acres of property surrounding each of the two existing wells. Accordingly, Texaco reduced Slaaten's royalties and entered into a compensatory royalty agreement with the United States, giving the government a portion of the royalties.

In 1967, a North Dakota district court held that the mineral reservation language in a deed identical to Slaaten's resulted in a relinquishment of the ownership of the mineral rights, except for twenty-five acres surrounding each producing well.[1] *United*

Orlin W. Backes, Minot, ND, argued, for plaintiff-appellant.

Cameron Wayne Hayden, Asst. U.S. Atty., Bismarck, ND, argued, for defendant-appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and BOGUE,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Doris Slaaten appeals from the district court's dismissal of her suit against the United States for conversion of oil and gas royalty payments. The district court held

---

* The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. Specifically, the court held that when the reservation expired, all minerals in the lands were vested in the United States, except for twenty-five acres of land around each producing well

*States v. Amax Petroleum Corp.*, Civil No. 712 (D.N.D. Oct. 16, 1967). Although the decision was unpublished and Slaaten was not a party to the suit, the court's interpretation supported the United States' position that it owned the mineral rights in all but the twenty-five acres surrounding each well. In 1968, Maude Slaaten wrote the Bureau, objecting to the compensatory royalty agreement and contending that she had repeatedly refused to recognize the government's claimed interest. The Bureau responded that the United States was entitled to payment under the Texaco royalty agreement and suggested that the question of the royalties Texaco owed to Slaaten was a private lease matter that she should negotiate with Texaco.

In 1985, the United States entered into an agreement with the Amerada Hess Corporation, authorizing Amerada Hess to develop the remaining 110 acres of land for oil and gas production. Amerada Hess paid the United States a bonus of $1,251,-836 for the drilling and production rights. Amerada Hess completed an oil and gas well in 1985 and has paid royalties to the United States since that time.

On December 5, 1986, Doris Slaaten[2] filed a letter of protest with the Bureau, disputing the United State's interest in the minerals. In support of her protest, she attached an engineer's analysis[3] of her rights. In January 1987 the Bureau dismissed her protest. The Bureau explained that "[i]t has been the Bureau's position, in response to numerous questions about these 25–acre reservations, the government acquired the entire present interest to the mineral estate in the lands covered by the respective deeds, excepting 25 acres surrounding (around) each producing well being drilled or developed at the end of the reservation period." The Bureau also stated that "[t]his position, we believe, was upheld by Judge Register's judgment" in *Amax*. The Bureau then advised Slaaten that she could appeal to the Interior Board of Land Appeals, and she filed a notice of appeal on February 11, 1987. On January 25, 1989, the Board issued a decision rejecting the Bureau's position and *Amax*, even though it recognized that the Bureau had "long interpreted" such restrictions in favor of the United States. *Doris Slaaten*, 107 IBLA 16, 20, 23 (1989). The Board concluded that the United States never had a right to the minerals.[4] *Id.* at 25. The Board denied the Bureau's petition for reconsideration on September 19, 1989, and the Bureau did not appeal the decision further.

Slaaten then presented a claim for $1,764,941.10 to the Bureau on April 17, 1990, claiming that the United States had negligently and wrongfully converted her property to its own use since November 1961. Because the Bureau did not respond within six months, she filed this action with the district court in March 1991.

The government requested summary judgment, which the district court granted with "great reluctance" because it believed the Federal Tort Claims Act two-year statute of limitations applied and barred consideration of Slaaten's claim. *Slaaten v. United States*, No. A4–91–038, slip op. at 8 (D.N.D. Jan. 2, 1992). The district court found that Slaaten had the requisite knowledge of her claim on December 5, 1986, but failed to file a claim for a sum certain until April 17, 1990. *Id.* The court also ruled that no equitable considerations were present to toll the statute of limitations. *Id.* The court noted that its reluctance was:

which remained with the defendants. Slip op. at 3.

2. Maude Slaaten conveyed all her interest to Doris Slaaten sometime before December 5, 1986.

3. The engineer concluded that the deed's twenty-five acre provision could not limit Slaaten's interest because all 160 acres of land had been fully developed with two 80–acre oil producing units, and therefore, Slaaten maintained her interest in all 160 acres.

4. The Board did not adopt either Slaaten's or the Bureau's position. Instead, the Board ruled that once the deed's condition precedent was met in some way (the requirement of producing for a commercial advantage), the exclusive right to prospect in, under, and upon the entire piece of land was automatically extended and remained with Slaaten. 107 IBLA at 23.

predicated upon the fact that the plaintiff and her family appear to have been victimized by the government ... for many years, and even after winning a favorable result in the administrative process, were told that a judicial decree was necessary to obtain relief. When seeking such a judicial decree they are met with great objection.

*Id.*

■ We review the district court's grant of summary judgment de novo, and will affirm only "when there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *McKee v. Federal Kemper Life Assur. Co.*, 927 F.2d 326, 328 (8th Cir.1991). We view the facts in the light most favorable to the nonmovant, and give it the benefit of all reasonable inferences. *Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008, 1013 (8th Cir.1991).

Section 2401(b) of the Federal Tort Claims Act requires that claimants present a claim to an appropriate federal agency within two years after the claim accrues and file an action within six months of the agency's certified or registered mailing of a claim's final denial. 28 U.S.C.A. § 2401(b). In addition, the presented claim must be for a sum certain in damages. 28 C.F.R. § 14.2(a) (1992); *Melo v. United States*, 505 F.2d 1026, 1029 (8th Cir.1974).

■ A claim "accrues" when the plaintiff knows or reasonably should know both the existence and cause of the injury. *United States v. Kubrick*, 444 U.S. 111, 121–23, 100 S.Ct. 352, 359–60, 62 L.Ed.2d 259 (1979); *General Elec. Co. v. United States*, 792 F.2d 107, 110 (8th Cir.1986). When the plaintiff knew or should have known is a question of federal law, which the court must determine in light of the surrounding circumstances. *United States v. LePatourel*, 593 F.2d 827, 830 (8th Cir. 1979) (*LePatourel II*).

Slaaten contends that her claim did not accrue until September 19, 1989, when the Board's decision, rejecting *Amax* and determining that the United States did not have an interest in the oil and gas, became final. Relying on our decisions in *United States v. LePatourel*, 571 F.2d 405 (8th Cir.1978) (*LePatourel I*), and *LePatourel II*, 593 F.2d at 827, Slaaten claims that before the Board's decision she did not have a reasonable expectation that a Federal Tort Claims Act suit would be successful because *Amax* was decided in the same district where her suit would have been filed, it interpreted language identical to that in her deed, and the holding was directly contrary to her position.

In *LePatourel*, a federal judge, driving on official business, was involved in a car accident which injured Valerie LePatourel. 571 F.2d at 406. LePatourel and her husband diligently attempted to obtain legal counsel to represent them in an action against the judge, but had a difficult time doing so. *LePatourel II*, 593 F.2d at 829. When they finally retained counsel and were ready to file a state tort action, they received a letter from a United States Attorney advising them that the FTCA applied (because the judge had been driving on official business) and the two-year statute of limitations barred their claims. *Id.* at 829–30. After they filed suit in state court, the United States substituted itself as a party and removed the case to federal court under the FTCA. *LePatourel I*, 571 F.2d at 406. The district court, however, held that removal was improper because federal judges were not within the purview of the FTCA. *Id.* at 407.

When *LePatourel I* came before this court, we reversed the district court and held (for the first time) that the FTCA applied to federal judges. *Id.* at 410. We also held, however, that the FTCA two-year statute of limitations barred the LePatourels' claims. *Id.* On petition for rehearing, we considered whether our holding should be applied prospectively, and remanded the case to the district court to determine why the LePatourels had failed to file within the two-year period. *Id.* at 410–11. After district court held that the LePatourels should be allowed to proceed with their claims, we affirmed en banc, holding that the statute of limitations did not begin to run until our panel determined that the

FTCA applied to federal judges acting in the scope of their employment. *LePatourel II*, 593 F.2d at 830. Although the LePatourels knew on the day of the accident that the judge had been driving his car on official business, no one ever mentioned the possibility that the FTCA might apply. *Id.* at 829–30. We concluded that the LePatourels' failure to determine that the FTCA might apply was reasonable, because before our first panel decision, the Fifth and Ninth Circuits had stated in dictum that judges were not covered by the Act, two district courts in this circuit had held that the Act did not apply to federal judges, and the government had not cited any case law that indicated the LePatourels should have known that the Act might cover judges. *Id.* at 831.

█ Similarly, on this record, it cannot be said that Slaaten had knowledge of her injury before September 19, 1989, when the Board rejected the Bureau's long-held position and *Amax*. All indications before that time were that Slaaten had no injury. Indeed, the Bureau had stated that it had taken the position that the government was entitled to the entire mineral estate except the twenty-five acres surrounding each producing well "in response to numerous questions about these 25–acre reservations." The Board's decision, rejecting *Amax* and the Bureau's long-held position, therefore, was " 'an avulsive change which caused the current of the law thereafter to flow between new banks.' " *LePatourel II*, 593 F.2d at 832 (quoting *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 499, 88 S.Ct. 2224, 2234, 20 L.Ed.2d 1231 (1968)). Like the LePatourels, Slaaten had no reason to know the FTCA might apply to her situation as she did not even know she had been injured until the "avulsive change" in the law occurred. *See id.* at 829–30, 832. Slaaten's claim did not accrue until she had this knowledge of her injury (September 19, 1989). Thus, her claim is not barred by the statute of limitations. *Cf. Kubrick*, 444 U.S. at 121–25, 100 S.Ct. at 359–60.

The government, however, argues that Slaaten knew the government had injured her by at least December 5, 1986. In other words, her claim accrued under *Kubrick*, 444 U.S. at 121–25, 100 S.Ct. at 359–60, and the two-year statute of limitations began to run when she sent her protest letter to the Bureau. A comparison of the facts in *Kubrick* and those in this case lead us to reject this argument.

In *Kubrick*, 444 U.S. at 115, 100 S.Ct. at 355, the plaintiff alleged that negligent medical treatment at a Veterans' Administrative hospital caused him to lose his hearing. He sued under the FTCA, but not within two years of learning that an antibiotic he received at the hospital caused his hearing loss. *Id.* at 113–15, 100 S.Ct. at 354–55. Kubrick argued that although he knew the antibiotic had caused his hearing loss shortly after his treatment, he did not know that use of the antibiotic constituted medical malpractice, and therefore, the statute of limitations did not begin to run until he knew or should have known that the prescribing doctor was legally blameworthy. *Id.* at 114, 118, 100 S.Ct. at 355, 357. Both the district court and court of appeals agreed that a plaintiff's ignorance regarding his legal rights should be treated like a plaintiff's ignorance of the fact or cause of injury, and thus, Kubrick's claim did not begin to run until he knew or should have known the treatment was improper. *Id.* at 116, 100 S.Ct. at 356. The Supreme Court, however, rejected this determination. *Id.* at 122, 100 S.Ct. at 359. The Court held that the statute of limitations began to run when Kubrick had knowledge of the fact of his injury and its cause. *Id.* The Court ruled that Kubrick's knowledge that he had been legally wronged was immaterial to the statute of limitations question. *Id.*

Here, however, we are dealing with property rights. Slaaten's knowledge of her injury (as described by the district court, the government's wrongful exercise of control over her property) was dependent upon the legal determination of whether the government's conduct was wrongful. Without the wrongful exercise of control, Slaaten has not suffered an injury. *Cf. Kubrick*, 444 U.S. at ·122, 100 S.Ct. at 359. Thus, knowledge of the fact of the injury is com-

plex because it involves a critical legal determination: whether the government's exercise of control over Slaaten's property was unlawful, and thus, wrongful. In response to Slaaten's 1986 protest, the Bureau relied on *Amax*, as it had "in response to numerous questions about these 25–acre reservations," and determined that the government's control was lawful. The Board, however, rejected *Amax* and the Bureau's long-held position, which led to its conclusion that the government had wrongfully exercised control over Slaaten's property. *Slaaten*, 107 IBLA at 23–24. At this point, Slaaten's situation became similar to that in *LePatourel*. The Board's determination of law, as opposed to a fact of physical injury which would be readily known to a plaintiff, completed Slaaten's knowledge of the fact of her injury. Slaaten's claim, therefore, did not accrue, and consequently, the statute of limitations did not begin to run until the Board denied the Bureau's petition for reconsideration on September 19, 1989. *Cf. Kubrick*, 444 U.S. at 121–25, 100 S.Ct. at 359–60.

■ Although the government urges us to affirm the district court, it also takes exception to the court's finding that Slaaten had the requisite knowledge of her claim on December 5, 1986. The government argues that Slaaten's claim accrued in 1961 because Maude Slaaten, Doris Slaaten's predecessor in interest, had knowledge of the fact of injury or its cause in 1961 when the United States entered into the compensatory agreement with Texaco. In accordance with our holding, we reject this argument. On this record, we cannot say that either Maude or Doris Slaaten knew of the injury (the government's wrongful exercise of control over the property) before the Board's decision became final.[5]

The government also argues that unlike *LePatourel I*, which was a published decision from this court, *Amax* was an unpub-lished district court decision which did not have precedential value and could not have barred Slaaten's claim in district court. The government has cited our rules and cases in which we refuse to recognize unpublished opinions as precedent. *See, e.g.,* Eighth Cir.R. 28A(k). A procedural rule in the workings of our court, however, is not determinative of the controversy between Slaaten and the government. Even though *Amax* was not published, it was the basis for the Bureau's position in this case and the Bureau's responses to "numerous questions about these 25–acre reservations." Thus, in reality, *Amax* had precedential effect on the Bureau. Therefore, this is similar to the situation in *LePatourel* in which the predominant understanding of the law had been in one direction, and later changed to go in the opposite direction. *See LePatourel II*, 593 F.2d at 832. Moreover, Slaaten should not be penalized for relying on the same district court opinion the government relied on, especially when that opinion interpreted identical language to her deed and was rendered in the same district where she would have been required to bring suit.

The government also contends that extending *LePatourel II* to this case would essentially eliminate the FTCA statute of limitations. We rejected a similar argument in *LePatourel II*, because "the class of claimants similarly situated ... cannot be so large as to threaten the interests protected by § 2401(b)." 593 F.2d at 832. The same conclusion applies to this case as the facts are unique—the language in Slaaten's deed was identical to the *Amax* language, *Amax* was decided in the same district where Slaaten would have been required to bring suit, the administrative agency relied on *Amax*, and *Amax* was directly contrary to Slaaten's position.

Although the government raises various other arguments, we need not address them as we have concluded that Slaaten did

---

**5.** Contrary to assertions by the parties and the district court, section 2401(b)'s limitation period is not jurisdictional in nature. *See Irwin v. Veterans Admin.*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Schmidt v. United States*, 933 F.2d 639, 640 (8th Cir.1991); *see also Argio*

*v. United States*, 980 F.2d 1159, 1161–62 (8th Cir.1992). "[F]ailure to comply ... is merely an affirmative defense which the defendant has the burden of establishing." *Schmidt*, 933 F.2d at 640; *see also* Fed.R.Civ.P. 8(c).

not have the requisite knowledge of her injury (the statute of limitations did not begin to run) until the Board's decision became final. The FTCA statute of limitations does not bar Slaaten's claim. We reverse and remand for further proceedings.