# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-2449

_____

| | | |
|---|---|---|
| Ruben Garza, as Personal | * | |
| Representative of Estate of | * | |
| Gloria Garza Regalado, Deceased, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| United States Bureau of Prisons, | * | |
| an agency of the United States of | * | |
| America; John Does, 1-50, with said | * | |
| designation representing all government | * | |
| and/or private companies, offices | * | |
| departments, individuals or entities | * | |
| charged with the obligation of | * | |
| overseeing, operating, or instituting | * | |
| or managing the programs | * | |
| under which the City of Faith Prison | * | |
| Ministries and/or any other entity | * | |
| housing Federal prisoners for the | * | |
| Federal Bureau of Prisons, or the | * | |
| insurance company for any individual | * | |
| or entity immune from direct action; | * | |
| United States of America, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: December 13, 2001

Filed:  March 27, 2002

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.
_____

BEAM, Circuit Judge.

Ruben Garza, personal representative for the Estate of Gloria Garza Regalado (hereinafter referred to as either "the Estate" or "Garza"), appeals from the district court's[1] dismissal of the Estate's wrongful death suit against the United States Bureau of Prisons (Bureau). The district court held that the suit was barred by the Federal Tort Claims Act's two-year statute of limitations, 28 U.S.C. § 2401(b). Garza argues that the claim was brought within the statute of limitations because it did not accrue until he discovered that an individual whose alleged tortious activity contributed to his sister's murder was an employee of the Bureau, and that the Bureau concealed information giving rise to the claim. Because we agree that the claim was time barred, we affirm.

## I.    BACKGROUND

On March 18, 1995, Edward Regalado (Regalado) was housed at the City of Faith, a halfway house located in Monroe, Louisiana, serving the remainder of an eight-year federal prison sentence for cocaine distribution. While there, he was assigned to work at an off-site location. On that date, Regalado failed to report back to the City of Faith after he completed his workday at an assigned job. He initially called the City of Faith and said he would be working late, but he failed to return at the time he had indicated. His absence was not initially reported to any law enforcement agency nor was his wife, Gloria Garza Regalado (Ms. Regalado), ever notified. Ms. Regalado was found murdered on March 19, 1995. On March 16,

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

-2-

1996, Regalado was convicted of murdering Ms. Regalado and is currently serving a life sentence.

Ms. Regalado's brother, Ruben Garza, was appointed personal representative of her estate. On January 29, 1998, Garza filed a state wrongful death action against the City of Faith and Regalado in a state court. Garza claims that, initially, he believed Dan Simpson, the person he alleges failed to notify law enforcement of Regalado's escape, was an employee of the City of Faith. During the discovery process in the action against City of Faith, Garza learned that Simpson was an employee of the Bureau. He subsequently pursued this action against the Bureau under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. (FTCA). An administrative claim, which is a prerequisite to filing a tort claim against the federal government, was filed with the Bureau on October 29, 1998. See 28 U.S.C. § 2401(b). Garza filed the federal action on June 7, 1999.

Garza alleges that the Bureau was negligent in failing to properly supervise Regalado (a resident with known violent propensities), to take proper steps to protect Ms. Regalado, and to act in a reasonably prudent manner in numerous other respects. The complaint alleges that the City of Faith failed to follow its own policies in managing the halfway house, that enforcement of those policies would have returned Regalado to prison prior to March 18, 1995, thereby thwarting the opportunity for him to murder Ms. Regalado, and that the Bureau is vicariously liable for the acts of its agent or, in the alternative, is liable for negligently supervising an independent contractor.

The Bureau challenged the court's subject matter jurisdiction pursuant to a Federal Rule of Civil Procedure 12(b)(1) motion. It moved to dismiss Garza's claim because, among other grounds, the claim was time barred by the FTCA's two-year statute of limitations for presenting claims to the appropriate agency. In response, Garza argued that the statute of limitations did not accrue until he discovered the

Bureau's involvement in the alleged tortious acts–that is, when he discovered Simpson was a Bureau employee. Garza also contended that the statute of limitations was equitably tolled because Simpson and the Bureau concealed and misrepresented the nature of the relationship between the Bureau and the City of Faith and concealed Simpson's role in failing to notify law enforcement of Regalado's escape.

The district court determined the Estate's claim accrued, at the latest, in February 1996, as it was on inquiry notice by that time. For instance, in a letter dated February 16, 1996, counsel for the Estate wrote to the U.S. Marshal Service that it was his "understanding [the Marshal Service] contacted the Federal Bureau of Prisons in New Orleans and spoke to someone down there about Mr. Regalado's failure to return from the Halfway House." Also, the court indicated that "common sense would tell a person that the federal government would retain a considerable degree of control and input over federal prisoners entrusted to the care of a non-governmental third party." In short, the court set forth various bases for determining that the Estate was on inquiry notice by February 1996. The court further found Garza had failed to produce evidence that either the Bureau or Simpson had concealed information that prevented discovery of a cause of action. Therefore, the statute of limitations was not equitably tolled. The court concluded that the Estate's October 29, 1998, claim to the Bureau was untimely, as it was not presented within the mandatory two-year limitations period and, consequently, dismissed the complaint without prejudice for lack of subject matter jurisdiction. On appeal, the Estate renews its arguments.

## II.    DISCUSSION

Under the FTCA, a tort claim against the United States must be presented in writing to the appropriate federal agency within two years after the claim accrues or it is time barred. 28 U.S.C. § 2401(b). In this case, the Estate's FTCA claim is

untimely if it accrued prior to October 29, 1996, which is the two-year mark prior to the date the claim was presented to the Bureau.

A claim generally accrues for FTCA purposes when the plaintiff is injured, Osborn v. United States, 918 F.2d 724, 731 (8th Cir. 1990), but might not accrue until the plaintiff knows or reasonably should know of both an injury's existence and its cause, Slaaten v. United States, 990 F.2d 1038, 1041 (8th Cir. 1993). Although some precedent suggests the latter definition has been used primarily in medical malpractice cases, see, e.g., K.E.S. v. United States, 38 F.3d 1027, 1029 (8th Cir. 1994), we find, based on authority addressing a diverse array of tort claims, that its application is  not so limited and is appropriate for the situation at hand, see, e.g., Lhotka v. United States, 114 F.3d 751, 753 (8th Cir. 1997) (applying reasonable knowledge definition in trespass and nuisance claim brought pursuant to FTCA); Slaaten, 990 F.2d at 1039, 1041 (applying same definition in conversion claim brought pursuant to FTCA); Diaz v. United States, 165 F.3d 1337, 1340 (11th Cir. 1999) (indicating the court was "persuaded by the opinions in the majority of Circuits that have . . . extend[ed] the diligence-discovery accrual rule to wrongful death actions brought under the FTCA"). "The rationale behind the modified rule is to protect plaintiffs who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the [tortious activity] are in the control of the torfeasor or are otherwise not evident." Diaz, 165 F.3d at 1339. Therefore, where the government has shown that a suit was untimely in that the claim was presented more than two years from the date of the injury, the plaintiff may show that he had no reason to believe he had been injured by an act or omission by the government. Drazan v. United States, 762 F.2d 56, 60 (7th Cir. 1985); see also Wollman v. Gross, 637 F.2d 544, 549 (8th Cir. 1980); Waits v. United States, 611 F.2d 550, 552 (5th Cir. 1980).

"When there are two causes of an injury, and only one is the government, the knowledge that is required to set the statute of limitations running is knowledge of

the government cause, not just of the other cause." Drazan, 762 F.2d at 59-60. The limitations period "begins to run either when the government cause is known or when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause–whichever comes first." Id. at 59. Therefore, when catalytic circumstances prescribe, a plaintiff must exercise reasonable diligence in inquiring into the injury's cause. Arvayo v. United States, 766 F.2d 1416, 1421-22 (10th Cir. 1985). But see, e.g., Drazan, 762 F.2d at 59-60 (indicating plaintiff's mere knowledge that her spouse died of cancer did not necessarily place her on inquiry notice); Diaz, 165 F.3d at 1341 (knowledge of spouse's suicide, "without any indication of medical treatment beforehand, [was] clearly not enough to put a plaintiff on notice that medical malpractice may have occurred"). Although "[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, . . . such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998) (citations omitted); cf. K.E.S., 38 F.3d at 1029 (indicating that if a plaintiff has been blamelessly ignorant of an injury, his cause of action does not accrue until he knows of the fact of injury and its cause). Also, a plaintiff's assertion of when he gained actual knowledge is not determinative if he did not act reasonably and, "in effect, closed [his] eyes to evident and objective facts concerning accrual of [his] right to sue." See Chrysler Workers Ass'n v. Chrysler Corp., 834 F.2d 573, 579 (6th Cir. 1987) (interpreting statute of limitations in claim against private employer under Labor Management Relations Act).

The assessment of whether a plaintiff has acted reasonably is an objective one and the conclusion varies with the facts of each particular case. Arvayo, 766 F.2d at 1422. In Arvayo, parents of an injured child failed to make any inquiry whatsoever into the cause of the injury, despite having received two very different diagnoses in a twenty-four-hour period. Id. The Tenth Circuit found that, under those circumstances, the plaintiffs' failure to inquire constituted a lack of diligence and,

therefore, their ignorance of the possible cause of their son's injury did not halt accrual of their cause of action. Id. at 1422-23. In contrast, in Drazan, the Seventh Circuit remanded the case for the trial court to determine when the plaintiff first had reason to believe that an act or omission by the government entity had been a cause of her spouse's death. 762 F.2d at 60.

Also, the statute of limitations under the FTCA "does not wait until a plaintiff is aware that an alleged tort-feasor is a federal employee." Gould v. United States Dep't of Health & Human Servs., 905 F.2d 738, 745 (4th Cir. 1990). Where the government or its agents have not misled or deceived a plaintiff, or otherwise hidden the legal identity of alleged tortfeasors as federal employees, the cause of action still accrues when the existence of an injury and its cause are known. Id.; cf. United States v. Kubrick, 444 U.S. 111, 123-24 (1979) (finding that where a plaintiff is aware of both the injury and its cause, he must inquire as to the legal significance of the acts).

In contrast, where the government fraudulently conceals material facts, the statutory period does not begin running until the plaintiff discovers, or by reasonable diligence could discover, the basis for the claim. Wehrman v. United States, 830 F.2d 1480, 1483 (8th Cir. 1987). Likewise, where a plaintiff has timely requested records that contain the specific facts of negligence that caused his injury, and those facts are not otherwise knowable, the cause of action does not accrue until he receives the records. Waits, 611 F.2d at 553.

"When the plaintiff knew or should have known is a question of federal law, which the court must determine in light of the surrounding circumstances." Slaaten, 990 F.2d at 1041. Where a trial court's subject matter jurisdiction has been challenged and the court relies on its own determination of disputed factual issues, the court's factual determinations are not disturbed unless they are clearly erroneous. Osborn, 918 F.2d at 730.

Here, Ms. Regalado was murdered on March 18 or 19, 1995, which would be the apparent date of accrual for the claim. The two-year period would have run as of March 19, 1997, at the latest, and the Estate's presentation of its claim to the Bureau on October 29, 1998, would be untimely under this basic analysis.

Instead, Garza contends that the claim did not accrue until he discovered that Simpson was a Bureau employee in September 1998, thereby rendering the October 29, 1998, claim timely filed. However, the lack of awareness that Simpson was a federal employee does not alone toll the statute of limitations. Gould, 905 F.2d at 745. Furthermore, to be on inquiry notice, the Estate need not have conclusively known the details giving rise to its claim. See Kronisch, 150 F.3d at 121; Chrysler, 834 F.2d at 579; Gustavson v. United States, 655 F.2d 1034, 1036 (10th Cir. 1981). Unlike in Drazan and Diaz, here the district court reached the issue of when the Estate should have known or inquired into the Bureau's involvement and actions, and there are sufficient factual findings to support the court's conclusion. Also, the Estate's own assertions undermine its position:

> The Appellant was under the impression [City of Faith] was an independent contractor, and not an agent of the [Bureau]. Concurrently, the Appellant was of the opinion [City of Faith], as an independent contractor, controlled the manner and method with which the [City of Faith] operated on a day-to-day basis. . . .

> . . . [T]he Appellant was under the impression that Dan Simpson was not an employee of the [Bureau], but was in fact an employee of [City of Faith]. It was during the attempt to schedule Dan Simpson's deposition during a . . . telephone conversation between the Appellant's counsel and the counsel for [City of Faith] in September of 1998 that the Appellant for the first time was conclusively apprised that Dan Simpson was not an employee of the [City of Faith], but was in fact, a Federal employee directly responsible for decisions involving escape[] of inmates.

(Citations omitted) (emphasis in original). As the court recognized, knowledge of a relationship between the City of Faith and the Bureau was sufficient to require inquiry into accountability of the respective parties and their employees' status. Moreover, from the time Ms. Regalado's body was discovered, inquiry was in order into the tragically obvious questions of whether she had been notified of Regalado's escape, whether anyone was responsible to make such notification and, if so, whom.

At the very least, the testimony of Ricky Banks (the security supervisor at the City of Faith) and Simpson prior to March 16, 1996, at Regalado's criminal trial, should have alerted the Estate that it needed to inquire into the relationship between the City of Faith and the Bureau and their respective responsibilities. For instance, Banks testified that he contacted the Bureau when Regalado failed to return. Simpson testified that there was a contract between the City of Faith and the Bureau, and that he was employed by the Bureau as its Community Corrections Manager when Regalado escaped and murdered Ms. Regalado. The Estate contends that it is not accountable for picking up on these red flags because it had not yet been created, Garza had not been appointed as its administrator and, in any event, Garza had observed only a portion of the testimony, and Ms. Regalado's sons were minors at the time. However, neither the failure to identify a proper plaintiff nor the logistics of creating an estate toll the statute. Sufficient details were presented to give notice of the Bureau's involvement and to require inquiry as to their legal significance. See Kubrick, 444 U.S. at 123-24. Although the Estate's personal representative and beneficiaries may not have directly heard the testimony, the trial transcript was available to them. At the very least, as the district court recognized, the Estate was certainly on inquiry notice by the time its counsel began to pursue its claims in February 1996. For accrual to occur, the Estate need not have had actual knowledge that Simpson was a Bureau employee or of his role in failing to notify Ms. Regalado. Gould, 905 F.2d at 745; Chrysler, 834 F.2d at 579.

Finally, we do not find the district court's factual findings regarding the Estate's allegations of fraudulent concealment to be clearly erroneous. Garza directs our attention to the testimony of Banks and Simpson at Regalado's criminal trial, contending that they present "inconsistencies and misstatements." He points out that Simpson testified Regalado was put on escape status at 8:00 p.m., March 18, 1995, but that City of Faith's file indicates that it did not contact the Bureau until 10:50 p.m. Also, during cross-examination regarding who controls complaints against City of Faith inmates and, thus, their resulting discipline, Banks was asked, "So the people at the City of Faith don't really have total control over the discipline situations, do they?" He responded, "Yes, they do." However, Banks was not referring to control as between the City of Faith and the Bureau, but between complainants and the City of Faith. In general, the Estate confuses factual disputes regarding its substantive claim with the underlying jurisdictional issue as to whether the Bureau fraudulently concealed information giving rise to the substantive claim. It is the latter that determines whether the statute of limitations has been tolled. When the Bureau was notified was likely not of central importance in the murder trial of Regalado, and the discrepancy in times does not necessarily demonstrate that Simpson's testimony was wrong, or that his statement was intended to conceal any wrongdoing by the Bureau. Simpson's testimony that he was a Bureau employee indicates that information giving rise to the Estate's claim was not fraudulently concealed, and the district court's findings were not clearly erroneous.

Likewise, the Estate's claims that the Bureau fraudulently concealed or destroyed records is without merit. It claims that the City of Faith did not comply with discovery requests, and that Simpson or the Bureau destroyed Regalado's City of Faith file. However, the discovery requests were made in a state suit to which the Bureau was not a party. Even if we were to attribute the City of Faith's actions to the Bureau, the court noted that the City of Faith's discovery responses, although indicating it had forwarded its resident file on Regalado to the Bureau, revealed that Simpson was a Bureau employee. Also, the district court determined that the

-10-

evidence indicated that the Estate was specifically advised by counsel for the Bureau that the file had not been destroyed but that the Estate needed to comply with appropriate regulations in order to obtain the information. The court found that the Estate "presented no evidence to support [the] allegation that the [Bureau] confiscated and destroyed Mr. Regalado's file." Despite allegations in its brief, counsel for the Estate admitted at oral argument that he did not have evidence that the file had been destroyed. The district court's findings of fact are not clearly erroneous.

## III. CONCLUSION

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.