Izabelle AZIZI, By and Through her next friend and mother, Suzanne AZIZI, and Charles Azizi, Suzanne Azizi, individually, and Melani Azizi, by and through her next friend and mother, Suzanne Azizi Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 8:03 CV 150.

United States District Court, D. Nebraska.

Sept. 28, 2004.

James R. Welsh, Robert Meyer, Welsh & Welsh P.C., Omaha, NE, for Plaintiffs.

Paul D. Boeshart, Assistant United States Attorney, Lincoln, NE, for Defendant.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

This matter is before the court on defendant's motion to dismiss or, alternatively, for summary judgment, Filing No. 17.

This is an action for damages as the result of medical malpractice under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 ("FTCA").

Defendant United States of America (hereinafter, "the government") asserts that plaintiffs' claims should be dismissed either as barred by the applicable statute of limitations or for failure to exhaust administrative remedies. Alternatively, the government contends that the uncontroverted evidence shows that it is entitled to judgment as a matter of law.

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) will succeed or fail based on the allegations that appear on the face of the complaint. *BJC Health Sys. v. Columbia Cas. Co.,* 348 F.3d 685, 687 (8th Cir.2003). A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Schmedding v. Tnemec Co.,* 187 F.3d 862, 864 (8th Cir.1999). Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Id.* Let it suffice to say that the face of the pleading contains no such insuperable bar to relief.

However, both parties have submitted evidence in support of their respective positions. When "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b); *BJC Health Sys.,* 348 F.3d at 687. When the district court relies on the matters outside the pleading, a motion to dismiss will be converted into one for sum-

mary judgment. *Id.* Because the parties have had an opportunity to respond and the court has considered their submitted evidence, defendant's motion will be treated as a motion for summary judgment. *Id.*

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Harder v. Acands, Inc.,* 179 F.3d 609, 611 (8th Cir.1999). Once a party has filed a motion for summary judgment, the burden shifts to the non-moving party to "go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Planned Parenthood of Minnesota/South Dakota v. Rounds,* 372 F.3d 969, 972 (8th Cir.2004) (quoting *Commercial Union Ins. Co. v. Schmidt,* 967 F.2d 270, 271 (8th Cir.1992)). A dispute is genuine if the evidence is such that a reasonable trier of fact could return a decision in favor of the party opposing summary judgment. *Id.* In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.,* 347 F.3d 1041, 1044 (8th Cir. 2003). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Koehn v. Indian Hills Community College,* 371 F.3d 394, 396 (8th Cir.2004).

### I. Facts

In her complaint, Suzanne Azizi, mother and next friend of thirteen-year-old Izabelle Azizi, alleges that Izabelle sustained pre-birth injuries in late-July, 1990, due to Mrs. Azizi's possible placenta previa while Mrs. Azizi was treated at a military hospital at MacDill Air Force Base ("MacDill AFB") in Florida. Mrs. Azizi alleges, on Izabelle's behalf, that Air Force medical providers were negligent in failing to adequately monitor prenatal care and in failing to timely perform a cesarean-section delivery. Filing No. 1, Complaint.

The uncontroverted deposition testimony and the medical records show that Suzanne Azizi was admitted to MacDill Air Force Base hospital on July 29, 1990, for vaginal bleeding. Filing No. 18, Ex. 3, Deposition of Suzanne Azizi, at 29–31. She was told she had suffered a placental abruption and was treated and released several days later with instructions to limit her activities. *Id.* at 43, 31. The vaginal bleeding continued until her daughter Izabelle was born on August 29, 1990. *Id.* at 34.

Mrs. Azizi testified that she began to suspect something was wrong when Izabelle was thirteen or fourteen months old and stopped using language skills. *Id.* at 45–46. Mrs. Azizi testified that Izabelle also experienced "staring spells." *Id.* at 46. Mrs. Azizi expressed concerns to pediatricians at MacDill AFB, who assured her that nothing was wrong. *Id.* In May 1992, Mrs. Azizi took Izabelle to a free hearing and speech screening clinic in Tampa, Florida, and was told that Izabelle had some developmental deficits. *Id.* at 49–50, 54. Izabelle was then referred to All Children's Hospital in St. Petersburg, Florida, for an evaluation. *Id.* at 60. Mrs. Azizi testified that Izabelle was diagnosed in 1992 with autism or pervasive developmental delay. *Id.* at 60–65; *see also id.* at Deposition Exhibit ("Depo.Ex.") 101. Medical records show that Izabelle continued to be diagnosed as autistic, or as having autistic-like behaviors in 1994, *id.* at Depo. Ex. 103, 1995, *id.* at Depo. Ex. 104 & 105, and 1998, *id.* at Depo. Ex. 109. Medical records also show that Mrs. Azizi pursued the possibility of alternative diagnoses for Izabelle of "Fragile X Syndrome" and "Landau–Kleffner Syndrome."

*See id.* at Depo. Exs.105 & 106. Those potential diagnoses were ruled out. *Id.*

Izabelle has been treated since 1996 by Dr. Richard Andrews. *See* Filing No. 24, Ex. 1, Affidavit of Richard V. Andrews, M.D. at 1. In 1999, Dr. Andrews diagnosed Izabelle as having "global developmental delay." *Id.* at Ex. B, medical records attached to Affidavit of Richard V. Andrews dated May 20, 1999. In April, 2000, Dr. Andrews noted gray flecks in Izabelle's teeth and stated, "[i]f this can be considered a marker associated with her cerebral development it certainly points towards a prenatal/perinatal brain development abnormality being responsible for her neurological condition." *Id.,* medical records dated April 5, 2000. Dr. Andrews later noted, "[t]here is some real question about the circumstances and appropriate medical care provided at the time of her birth." *Id.,* medical records dated February 9, 2004. Dr. Andrews states in his affidavit that a diagnosis of autism for Izabelle was not appropriate. Filing No. 24, Ex. 1 at 2.

Mrs. Azizi testified that the first time she connected Izabelle's difficulties with the treatment at MacDill AFB was while she was studying the brain at University of Nebraska at Omaha in 2000 or 2001. Filing No. 18, Ex. 3 at 112. She also testified, however, that she "indirectly" suspected a link between the bleeding episode and Izabelle's condition as early as 1992. *Id.* at 70. She had not asked medical providers whether Izabelle's autism had been caused by the bleeding episode because the literature Mrs. Azizi had read said there was no explanation for the cause of autism. *Id.* at 89.

Suzanne Azizi has also shown that she requested Izabelle's medical records from MacDill AFB Hospital shortly after Izabelle's first birthday in August 1991, and annually thereafter, but that Izabelle's records were not provided until an attorney requested the records sometime after April 1998. Filing No. 24, Ex. 3, Affidavit of Suzanne Azizi. The government has not controverted that assertion.

On December 22, 1999, plaintiff Izabelle Azizi, "by and through her Next Friend and Mother, Suzanne Azizi," filed a claim for damage, injury, or death with the Department of the Air Force ("Air Force"). Filing No. 1, Ex. A. The Air Force denied Izabelle Azizi's claim on January 23, 2003. Filing No. 1, Ex. C. It found the claim had been filed after the applicable two-year statute of limitations period applicable under the FTCA. *Id.* at 1. The Air Force further found no negligence in Mrs. Azizi's prenatal care, stating that it found "no medical indication for performing a caesarian section" at the time Mrs. Azizi was admitted for vaginal bleeding during the third trimester of her pregnancy and noting, "Izabelle was born with excellent Apgar scores suggesting no compromise *in utero* during labor and delivery." *Id.* at 2.

Plaintiffs Suzanne Azizi, Charles Azizi, and Melani Azizi, in their individual capacities, concede that they have not filed claims with the Air Force, and seek dismissal of their claims without prejudice. *See* Filing No. 23, Plaintiffs' Brief at 8.

## II.  DISCUSSION

### A.  Failure to Exhaust Administrative Remedies

An action for personal injury against the United States must first be presented to the appropriate federal agency. 28 U.S.C. § 2675(a). Administrative exhaustion is a jurisdictional prerequisite to suit, *McCoy v. United States,* 264 F.3d 792, (8th Cir.2001), but the timeliness of the administrative claim is merely an affirmative defense which the defendant has the burden to establish. *Schmidt v. United States,* 933 F.2d 639, 640 (8th Cir.1991). Because it is undisputed that Suzanne Azizi, Charles Azizi and Melanie Azizi have

not filed any administrative claim, timely or not, their claims are subject to dismissal. Izabelle's individual administrative claim is not sufficient under the FTCA to serve as notice to the government of potential loss-of-consortium claims by other family members that could be derived from Izabelle's claim. *Manko v. United States*, 830 F.2d 831, 840–41 (8th Cir.1987).

## B. Statute of limitations.

■■■ Under the FTCA, claim against the United States is barred unless presented to the appropriate federal agency within two years after the claim accrues. 28 U.S.C. § 2401(b). Azizi presented her claim to the Air Force on December 22, 1999, so her action will be barred if her claim is found to have accrued before December 22, 1997. *See Motley v. United States*, 295 F.3d 820, 822 (8th Cir.2002). When a claim accrues under the FTCA is a question of federal law. *Id.* Although a claim generally accrues for FTCA purposes when the plaintiff is injured, *Osborn v. United States*, 918 F.2d 724, 731 (8th Cir.1990), a claim for medical malpractice does not accrue "until the plaintiff knows or reasonably should know of both an injury's existence and its cause." *Garza v. U.S. Bureau of Prisons*, 284 F.3d 930, 934 (8th Cir.2002). Thus, if the defendant makes a preliminary showing that the plaintiff's claim was presented more than two years after the date of the injury, as it has in this case, the plaintiff is afforded an opportunity to show that he or she had no reason to believe the injury had been caused by the government's act or omission. *See id.* The rationale behind this rule is to protect plaintiffs who are " 'blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the [tortious activity] are in the control of the tortfeasor or are otherwise not evident.' " *Garza*, 284 F.3d at 934 (quoting *Diaz v.*

*United States*, 165 F.3d 1337, 1340 (11th Cir.1999)).

■■ The limitations period thus begins to run when the cause of the injury is either known or when a reasonably diligent person (in the tort claimant's position), reacting to any suspicious circumstances of which he might have been aware, would have discovered the cause—whichever comes first. *Id.* at 934–35. Once aware of an injury, a plaintiff has a duty to exercise due diligence in investigating its cause. *Id.; Brazzell v. United States*, 788 F.2d 1352, 1356 (8th Cir.1986) (stating that a plaintiff "ought to be charged with ... knowledge [of the cause] as soon as she could have discovered ... the cause by asking a doctor"). "Although '[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, ... such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence.' " *Garza*, 284 F.3d at 935 (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir.1998) (citations omitted)).

■■■ Even if it is shown that a plaintiff knew or should have known of an injury so as to trigger accrual of a claim, statutes of limitations in suits against the government are subject to equitable tolling. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Because statutes of limitations protect important interests of certainty, accuracy, and repose, equitable tolling is an exception to the rule, and should be used only in exceptional circumstances. *Motley*, 295 F.3d at 824. The party claiming the benefit of an exception to the operation of a statute of limitations bears the burden of showing that she is entitled to it. *Id.* Where the government fraudulently conceals material facts, the statutory period will not begin to run until the plaintiff discovers, or by reasonable

diligence could discover, the basis for the claim. *Wehrman v. United States*, 830 F.2d 1480, 1483 (8th Cir.1987). For example, where a plaintiff has timely requested records that contain the specific facts of negligence that caused his injury, and those facts are not otherwise knowable, the cause of action does not accrue until he or she receives the records. *See Garza*, 284 F.3d at 935–36.

■ The evidence establishes that Mrs. Azizi was certainly aware by the time Izabelle was a toddler that her daughter had developmental delays. Although she testified that she always suspected that Izabelle's delays were somehow connected to the episode of vaginal bleeding during the third trimester, the existing record shows there are genuine issues of material fact with respect to whether or not Mrs. Azizi exercised reasonable diligence in discovering the cause of Izabelle's condition. Significantly, Izabelle was either misdiagnosed or improperly diagnosed for many years as having autism, a disease that results "from causes unknown or poorly understood" and is "less frequently associated with specific instances of prenatal and/or birth trauma than conditions such as cerebral palsy or mental retardation, which often appear to be the direct result of brain injury." Filing No. 24, Ex. 3, Affidavit of Kevin Menafee, Ph. D., at 2. The first mention in medical records of a possible connection to birth trauma is in the records of Dr. Andrews in 1999. The medical records show that Mrs. Azizi was never informed by any physicians that the episode at MacDill AFB in the third trimester of her pregnancy could have caused Izabelle's difficulties until Izabelle was treated by Dr. Andrews. The records show that Mrs. Azizi informed numerous medical providers of the bleeding episode, but there are no indications that any health practitioners believed the episode was significant. *See Osborn v. United States*, 918 F.2d 724, 732–34 (8th Cir.1990)

(FTCA action for malpractice accrued for statute of limitations purposes when plaintiff learned from physicians that prior medical treatment could have caused injury). Mrs. Azizi's subjective belief that the placental abruption caused her daughter's mental retardation does not necessarily show a lack of diligence in failing to further inquire in the face of medical assurances to the contrary. "The assessment of whether a plaintiff has acted reasonably is an objective one and the conclusion varies with the facts of each particular case." *Garza*, 284 F.3d at 935.

Although the court is inclined to believe that the passage of twelve years without discovery of the potential cause of the Izabelle's condition may equate to a lack of reasonable diligence, the court is unable, based on the present record, to make that finding as a matter of law. Of particular significance is the fact that plaintiff has shown that she attempted to obtain medical records and that the records were not provided to her. Defendant has not controverted this assertion. Plaintiff has thus established that equitable tolling may be appropriate. The court finds there is at least a genuine issue of material fact on whether or not the statute should be equitably tolled by reason of defendant's failure to provide records to Mrs. Azizi.

IT IS THEREFORE ORDERED that the United States' motion to dismiss, or in the alternative, for summary judgment, Filing No. 17, is denied.