# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1994

_____

Michael W. Ryan; Rowena B.　　　　　*
Madrigal; Beverly M. Bowker,　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Appellants,　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of North Dakota.
United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*　　　　　[PUBLISHED]
　　　　　　Appellee.　　　　　　　*

_____

Submitted: January 17, 2008
Filed: July 22, 2008 (corrected July 24, 2008)

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and GOLDBERG, Judge.[1]

_____

PER CURIAM.

Michael Ryan, Rowena Madrigal, and Beverly Bowker sued the United States under the Federal Tort Claims Act (FTCA). They claim that Madrigal and Bowker were switched at birth in 1946 and sent home with the wrong mothers due to the

_____

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

negligence of the United States. The district court[2] concluded that the statute of limitations barred the plaintiffs' claims, and dismissed the suit for lack of subject matter jurisdiction. We affirm.

## I.

We recount the facts as found by the district court, omitting the factual findings that are disputed on appeal. Beverly Bowker and Rowena Madrigal were born on the morning of July 27, 1946, at Standing Rock Hospital in Fort Yates, North Dakota. Beverly Bowker was sent home with Susie Slow Bowker and Virgil Bowker, who became her legal parents. Rowena Madrigal was sent home with Grace Medicine, who became her legal mother. Michael Ryan's name was later added to Madrigal's birth certificate as the father.

Throughout their lives, Rowena Madrigal and Beverly Bowker heard rumors that they had been switched at birth. In childhood, Bowker's mother told her of the possible switch, and Madrigal's mother told her that she belonged with the Bowkers. At some point before 1973, Madrigal and Bowker met each other, and Bowker noticed that Madrigal looked like Bowker's brother.

In 1973, Beverly Bowker traveled to Colorado to talk with Madrigal's legal mother, Grace Medicine, and traveled to California to talk with Madrigal's legal father, Ryan, "to find out if there [was] any truth to any of the rumors" that she had been switched at birth, and was actually their child. In 1974, Medicine and Ryan accepted Bowker's invitation to attend her college graduation. Ryan asked his sister, a nurse, about blood tests for paternity in the 1970s, but decided against them after she suggested that they were unreliable. Bowker also went to Madrigal's home in the

---

[2]The Honorable Karen K. Klein, United States Magistrate Judge for the District of North Dakota, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

1970s and spoke to her about "being baby switched." Madrigal asked Bowker to leave, but later tried to contact a hospital nurse to look into the rumor.

Michael Ryan and Beverly Bowker submitted their DNA for paternity testing in July 2002. These tests showed a 99.4% probability that Bowker is Ryan's biological daughter. In January 2004, Ryan, Bowker, and Madrigal all submitted DNA for further testing. These tests showed a 99.998% probability that Bowker is Ryan's biological daughter, and a 0% probability that Madrigal is Ryan's biological daughter. Ryan filed an administrative claim against the United States for negligence under the FTCA in September 2002; Madrigal and Bowker filed a similar claim in January 2004. The government moved to dismiss the claims as barred by the statute of limitations, asserting that the plaintiffs knew or should have known of their claims long before the running of the two-year statute of limitations. The district court agreed and dismissed the claims.

II.

A tort claim against the United States is barred unless the plaintiff files an administrative claim within two years after the claim accrues. 28 U.S.C. § 2401(b). A claim generally accrues when a plaintiff is injured, although in "a diverse array of tort claims," there is authority that a claim does not accrue until the plaintiff "knows or reasonably should know of both an injury's existence and its cause." *Garza v. U.S. Bureau of Prisons*, 284 F.3d 930, 934 (8th Cir. 2002). "Because a plaintiff's compliance with the statute of limitations is a prerequisite to the district court's jurisdiction over a suit against the United States under the FTCA, the district court must resolve material issues of disputed fact and determine whether the action was timely filed." *T.L. ex rel Ingram v. United States*, 443 F.3d 956, 961 (8th Cir. 2006); *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). When the district court makes findings of fact on disputed issues, we review those findings for clear error. *Ingram*, 443 F.3d at 961. Whether the plaintiff has acted reasonably calls for an

-3-

"objective" assessment, *Garza*, 284 F.3d at 935, and we review the district court's legal determinations *de novo*. *Appley Bros. v. United States*, 164 F.3d 1164, 1170 (8th Cir. 1999); *see Skwira v. United States*, 344 F.3d 64, 72 (1st Cir. 2003).

Ryan, Bowker, and Madrigal argue that the district court erred in concluding that the plaintiffs knew or should have known of their injury more than two years before the administrative claims were filed. The plaintiffs contend that without the DNA evidence gathered in 2002 and 2004, the information available to them consisted merely of rumors, and that these rumors were insufficient to trigger the running of the statute of limitations. It is true that a claim does not accrue "when a person has a mere hunch, hint, suspicion, or rumor of a claim," *Garza*, 284 F.3d at 935, but suspicions of this sort "do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." *Id.* (internal quotation omitted). Thus, the critical question here is not whether the plaintiffs *actually* obtained scientific proof of their alleged injury before 2000 and 2002, respectively, but whether a diligent inquiry would have led the plaintiffs to scientific testing and verified the existence of their injuries more than two years before their claims were filed. "The party who is claiming the benefit of an exception to the operation of a statute of limitations bears the burden of showing that he is entitled to it," *Wollman v. Gross*, 637 F.2d 544, 549 (8th Cir. 1980), so the plaintiffs must demonstrate that the claims were not previously discoverable through the exercise of due diligence.

The plaintiffs conceded at oral argument that DNA testing was available in the 1990s, and we take judicial notice of the accuracy of this concession. E. Donald Shapiro et al., *The DNA Paternity Test: Legislating the Future Paternity Action,* 7 J.L. & Health 1, 29 (1992-1993). The plaintiffs contend, however, that the government failed to prove that the plaintiffs themselves were knowledgeable about DNA testing at such an early date, and that their claims therefore did not accrue until much later. Whatever the plaintiffs might personally have known about DNA testing, however, their duty to investigate their possible claims included a duty to consult with legal and

medical experts. The Supreme Court has explained that a plaintiff "can protect himself by seeking advice in the medical and legal community," and that "[t]o excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government." *United States v. Kubrick*, 444 U.S. 111, 123 (1979). If the plaintiffs had inquired of a reasonably competent physician or attorney about their claims in the 1990s, then they undoubtedly would have learned at that time about the use of DNA testing in paternity cases. Plaintiffs have presented no evidence to establish that DNA testing was unavailable before 2000, and their own submissions indicate that DNA testing would have revealed their alleged injuries at an earlier time.

The plaintiffs also argue that their case presents the sort of "exceptional circumstances" that justify equitable tolling of the statute of limitations. *See Ingram*, 443 F.3d at 963. Plaintiffs assert that the doctor who gave Beverly Bowker to Susan Slow Bowker in 1946 insisted that Beverly was the correct child, and they suggest that the doctor's representation affirmatively misled them into allowing the filing deadline to pass. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Even making that assumption, however, the fraudulent concealment of material facts prevents the running of the statutory period only "until the plaintiff discovers or by reasonable diligence could discover the basis for the claim." *Wehrman v. United States*, 830 F.2d 1480, 1483 (8th Cir. 1987). Here, the plaintiffs could have discovered the basis for their claims well before September 2000 by conducting a diligent inquiry once they had reason to develop suspicions about the accuracy of the doctor's statement. As difficult as that process might have been for a father and daughter who were matched by a hospital at the time of birth, the law requires this level of investigation by a party who wishes to sue the United States under the FTCA.

The statute of limitations is designed to guard against just the sort of difficulties that would be presented by attempting to litigate this case more than sixty years after

the alleged injuries occurred.  Witnesses have died or retired, memories have faded, personnel records have been destroyed, and medical records are unavailable.  After considering the record and the equitable arguments advanced by the plaintiffs, we see no legal basis to permit these claims to proceed at such a late date.  Accordingly, the judgment of the district court is affirmed.

————————————————