959 F.2d 230
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
David H. FISHER, Plaintiff, Appellant,
v.
UNITED STATES OF AMERICA, et al., Defendants, Appellees.
 No. 91-1439.
 United States Court of Appeals,
First Circuit.
 April 1, 1992
 
 David H. Fisher on brief pro se.
 Wayne A. Budd, United States Attorney, and Mary Elizabeth Carmody, Assistant United States Attorney, on brief for appellee.
 Before Torruella, Circuit Judge, Campbell, Senior Circuit Judge, and Cyr, Circuit Judge.
 Per Curiam.
 
 
 1
 Pro se plaintiff-appellant David Fisher appeals from a district court judgment dismissing his complaint for damages alleged to have resulted from his wrongful arrest and indictment on drug charges. The complaint named as defendants New Jersey Assistant United States Attorney Jeremy Frey, Drug Enforcement Administration (DEA) agent Steven Morreale, and DEA informant Mario Alvarez. Fisher alleged, essentially, that Alvarez deliberately and maliciously lied in telling the DEA and a grand jury that he, Fisher, had purchased cocaine in 1981; that Agent Morreale negligently relied only on Alvarez's information in seeking Fisher's arrest, and that Frey deliberately and maliciously held Fisher under indictment after acquiring reason to believe that Fisher had been wrongfully arrested.
 
 
 2
 In five separate orders issued between 1989 and 1991, the district court dismissed Fisher's claims against the individual defendants on a variety of grounds, substituted the United States as a defendant for Agent Morreale under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2679(d)(1), and dismissed Fisher's tort claim against the United States for lack of timely presentment under the FTCA. Fisher challenges each decision on appeal. We affirm.
 
 I.
 
 3
 We have reviewed the record and conclude that the district court properly dismissed Fisher's claim against Prosecutor Frey on the ground that Frey was entitled to absolute immunity. Fisher alleged that Frey failed to dismiss the charges against him after acquiring reason to believe that Fisher had been wrongfully arrested. Frey allegedly continued to prosecute Fisher only to preserve the credibility of the informant, Alvarez, who was a key witness in the trial of other drug defendants. As Frey's alleged wrongdoing was undertaken in the performance of his advocatory function, he is entitled to absolute immunity. See Burns v. Reed, 111 S. Ct. 1934, 1940-42 (1991); Imbler v. Pachtman, 424 U.S. 409, 430 (1976); Siano v. Justices of Massachusetts, 698 F.2d 52, 57-58 & n.8 (1st Cir. 1983).
 
 II.
 
 4
 We further conclude that the court properly dismissed Fisher's claim against Alvarez for lack of subject matter jurisdiction. Fisher alleged that Alvarez lied to the DEA and the grand jury and that this resulted in Fisher's wrongful arrest and indictment. Such conduct was not sufficient to render Alvarez a government actor under Bivens v. Six Unknown Named Agents of Fed. Narcotics Burea u, 403 U.S. 389 (1971). While Alvarez was paid for his information and ultimately placed in the Witness Security Program, these factors do not establish that Alvarez was so subject to government control when he informed the DEA of Fisher's alleged drug dealing as to be a government actor. Compare United States v. Cella, 568 F.2d 1266, 1282 (9th Cir. 1977) (where hospital employee involved in misappropriating funds agreed to become informant after being arrested on unrelated charges, employee was government actor when he thereafter obtained documents incriminating defendants for authorities); Matje v. Leis, 571 F. Supp. 918 (S.D. Ohio 1983) (tacit acquiescence of police in drug informant's alleged misconduct presented genuine issue of material fact whether informant acted under color of state law while participating in police investigation). " 'It is the nature of the act performed, not the clothing of the actor or [, if the actor is a police officer,] even the status of being on duty, or off duty which determines whether the officer has acted under color of law.' " Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975),(quoting Johnson v. Hackett, 284 F. Supp. 933, 937 (E.D. Pa. 1968)). Under this test, the nature of Alvarez's alleged wrong lying to the DEA and the grand jury -is not sufficient to render Alvarez a government actor for Bivens purposes. To hold otherwise would render all those who report information in return for rewards government actors.[1]
 
 III.
 
 5
 Fisher alleged that Agent Morreale negligently relied on information provided by Alvarez in procuring Fisher's arrest without probable cause. Both the government and the district court initially treated Fisher's complaint as sufficient to state a claim against Agent Morreale under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 389 (1971). Thereafter, in response to the government's motion to dismiss Agent Morreale and substitute the United States as a defendant under the Federal Tort Claims Act (FTCA), the court ruled that the complaint failed to state a claim under Bivens and dismissed Agent Morreale as an individual defendant. Fisher's case proceeded against the United States under the FTCA.
 
 
 6
 We think that the court dismissed Agent Morreale prematurely. The Supreme Court has ruled that the remedies provided by Bivens and the FTCA are complementary, not mutually exclusive. See Carlson v. Green, 446 U.S. 14, 18-23 (1980). Where the government and the district court initially treated Fisher's complaint as sufficient under Bivens, it was error to dismiss Fisher's Bivens claim against Agent Morreale upon substituting the United States as a defendant for Morreale under the FTCA. Under Carlso n, Fisher was entitled to proceed against the United States on his FTCA claim and against Morreale individually on his Bivens claim.
 
 
 7
 Nevertheless, we affirm the dismissal of Fisher's Bivens claim against Agent Morreale because the record establishes that Morreale is entitled to qualified immunity. "Seeking an arrest warrant is 'objectively reasonable' so long as the presence of probable cause is at least arguable." Prokiey v. Mathews, 942 F.2d 67, 72 (1st Cir. 1991), (citing Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985)). "To be 'arguable' under Floyd means that it is possible for 'officers of reasonable competence' to fairly disagree over whether probable cause exists ... The presence of probable cause would not be 'arguable' if no reasonably competent officer would have found probable cause." Prokiey, 942 F.2d at 72 n.4 (citations omitted).
 
 
 8
 The record establishes that Alvarez was a drug dealer of some repute known to the Elizabeth, New Jersey police department. Between 1977 and 1982, Alvarez was a member of a drug ring headed by a known kingpin, Carlos Fernandez. In 1981, Alvarez was arrested by the Kenilworth, New Jersey police. Among his personal effects were various business cards, including that of plaintiff, Fisher, who was then employed by the Sheraton-Boston Hotel. Alvarez was arrested again in 1983. While serving a sentence for assault, he volunteered information to the authorities about the Fernandez drug ring. Morreale ascertained that Alvarez was familiar with the comings and goings of Fernandez. As a result, the DEA and the New Jersey police formed a task force to investigate Fernandez between August 1984 and June 1985. Alvarez was periodically taken from jail and debriefed. During one of these debriefing sessions, Alvarez reviewed photocopies of the business cards that had been taken from him after his 1981 arrest. He identified Fisher's card and told Morreale that Fisher purchased cocaine that Alvarez delivered to Fernandez and others at the Sheraton in 1981. Morreale verified that Fisher worked for the Sheraton. Based on Alvarez's information, Morreale obtained a warrant for Fisher's arrest. Fisher was arrested in New York on March 15, 1985. Alvarez subsequently identified Fisher as the person who had purchased drugs at the Sheraton after reviewing a photo array. A New Jersey grand jury indicted Fisher on drug charges based on the testimony of Agent Morreale and Alvarez. Prosecutor Frey dismissed these charges without prejudice on February 16, 1986.
 
 
 9
 "Probable cause to make an arrest exists where the facts and circumstances of which the arresting officer has knowledge would be sufficient to permit a reasonably prudent person, or one of reasonable caution, to conclude that an offense has been ... committed." United States v. Cruz Jiminez, 894 F.2d 1, 4 (1st Cir. 1990). "[T]he quantum of evidence necessary to support probable cause ... is not required to rise to the level of that needed to sustain a conviction." Id.
 
 
 10
 It is undisputed that Agent Morreale procured Fisher's arrest based solely on the information provided by Alvarez in the context of the DEA's investigation of the Fernandez drug ring. While we do not decide whether this information was sufficient to establish probable cause to arrest Fisher, we think that Alvarez gave Morreale at least an arguable basis to believe that he had probable cause to arrest Fisher for possession of cocaine. Alvarez was a former member of the Fernandez drug ring and had demonstrated his familiarity with Fernandez's activities. He identified Fisher as one who purchased cocaine that Alvarez delivered to the Sheraton on behalf of Fernandez. Morreale corroborated the fact that Fisher worked at the Sheraton. To be sure, other evidence arguably undermined Alvarez's story.[2] But this evidence does not compel the conclusion that probable cause was lacking. Where the record discloses that a reasonable law enforcement officer could have found probable cause to arrest Fisher based on the information provided by Alvarez, Agent Morreale is entitled to qualified immunity from Fisher's Bivens claim.[3]
 
 IV.
 
 11
 Fisher filed an administrative claim with the Justice Department for false arrest on June 15, 1987. Fisher was arrested on March 14, 1985. Under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2401(b), "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." The district court ruled that Fisher's claim accrued on the date of his arrest and was, consequently, time-barred because he did not present it to the government until two years and three months after his arrest. On appeal, Fisher argues that his false arrest claim should be viewed as a continuous tort which did not accrue until the date the charges against him were dismissed (i.e., February 16, 1986). He further says that under United States v. Kubrick, 444 U.S. 111 (1979), his claim did not accrue until he learned of his injury and its cause. While Fisher concedes that he was aware of his injury "from the moment of arrest" (Appellant's Brief at p. 4), he argues that he does not know why Alvarez concocted this story about him, therefore his claim should not be time barred.
 
 
 12
 We are not persuaded that false arrest is properly conceived as a continuing tort under the FTCA. "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981). Courts in analogous contexts have viewed the imprisonment or confinement engendered by a false arrest as a continuing ill effect of an initial wrong and not as a continuing tort for purposes of determining when the statute of limitations starts to run. See, e.g., McCune v. Grand Rapids, 842 F.2d 903,,906-07 (6th Cir. 1988); Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982)(per curiam). See also Singleton v. New York, 632 F.2d 185, 191 (2d Cir. 1980). We think this is the correct view of the tort of false arrest. Accord, Hitchmon v. United States, 585 F. Supp. 256, 259-61 (S.D. Fla. 1984). This is not a case where "no single incident in a continuous chain of tortious activity" can be identified as the cause of Fisher's harm. Compare Page v. United States, 729 F.2d 818, 821-22 (D.C. Cir. 1984). Fisher's arrest was readily identifiable as the event which caused his injury.[4]
 
 
 13
 The Supreme Court has determined that a plaintiff must know the "critical facts" of his injury and its cause in order for his cause of action to accrue under the Federal Tort Claims Act. See United States v. Kubrick, 444 U.S. 111, 122 (1979). One who is aware that he has been hurt and who has inflicted the injury is in a position to ascertain, perhaps with the assistance of counsel, whether he has suffered a legal wrong. Id. But Kubrick rejects the view that accrual is delayed until such time as a plaintiff acquires, or reasonably should acquire, knowledge of each element of his tort claim. See, e.g., Zeleznick v. United States, 770 F.2d 20, 23 (3d Cir. 1985), cert. denied 475 U.S. 1108 (1986); Fidler v. Eastman Kodak Co., 714 F.2d 192, 198 (1st Cir. 1983); Stoleson v. United States, 629 F.2d 1265, 1268-69 & n.3 (7th Cir. 1980). We think that this means that it was not necessary for Fisher to know why Alvarez accused him of this crime in order for his cause of action to accrue. Fisher concedes that he was aware of his injury at the moment of his arrest. That this injury was caused by the government, or, more specifically, the DEA, was obvious. Where Fisher's injury and its immediate cause were apparent upon his arrest, we think that these "critical facts" were sufficient to put Fisher on notice to inquire whether he had been legally wronged (i.e., whether he had been arrested absent legal justification). See United States v. Zeleznick, 770 F.2d at 23 (3d Cir. 1985); United States v. Dyniewicz, 742 F.2d 484, 486 (9th Cir. 1984); Steele v. United States, 599 F.2d 823, 829 (7th Cir. 1979)(where injury is immediate and manifest and close in time with allegedly negligent conduct, claim accrues instantly). Thus, we conclude that the district court correctly determined that Fisher's false arrest claim under the FTCA accrued at the time of his arrest and that it was barred under 28 U.S.C. § 2401(b). Accord, Hitchmon v. United States, 585 F. Supp. at 259-61 (S. D. Fla. 1984).[5]
 
 
 14
 For the foregoing reasons, the district court judgment dismissing Fisher's claims against Frey, Morreale, Alvarez and the United States is affirmed.
 
 
 
 [1]
 Some courts have extended the witness immunity recognized in Briscoe v. La Hue, 460 U.S. 325, 329 (1983), to witnesses testifying before grand juries. See, e.g., Grant v. Hollenbach, 870 F.2d 1135 (6th Cir. 1989); Little v. Seattle, 863 F.2d 681 (9th Cir. 1988). Alvarez may be similarly immune insofar as he testified before the grand jury. As the issue has not been raised, we need not decide the point
 
 
 [2]
 For example, Fisher's name did not appear on other slips of paper that recorded Alvarez's drug transactions during an unknown time period. And, Alvarez admitted that he was addicted to cocaine at the time of the alleged transaction with Fisher
 
 
 [3]
 Fisher has not alleged that Morreale intentionally sought to violate Fisher's constitutional rights (e.g., by knowingly falsifying his complaint in support of Fisher's arrest warrant). Nor has Fisher shown that Morreale acted with reckless indifference to Fisher's constitutional rights. Absent evidence of either type of misconduct, Fisher cannot sustain his Bivens claim against Agent Morreale. See Germany v. Vance, 868 F.2d 9, 17-19 (1st Cir. 1989)(either intentional or recklessly indifferent conduct may result in a constitutional violation)
 
 
 [4]
 We note that under New York law, false arrest is a continuous tort which accrues upon the arrestee's initial release from custody, not when the charges against the arrestee are dismissed. See Kramer v. Herrera, 576 N.Y.S.2d 737, 737 (A.D. 4 Dept. 1991); Karen v. State, 444 N.Y.S.2d 381, 384 & n.4 (1981). Even were we to adopt such an approach, it would not save Fisher's claim. Fisher was not in custody the entire time the charges against him were pending. Rather, he was released subject to the conditions that he surrender his passport and report periodically to the authorities. We assume that this occurred shortly after Fisher's arrest on March 14, 1985 or indictment on March 20, 1985. Fisher's claim would remain time-barred even under this continuing tort theory
 
 
 [5]
 The district court construed Fisher's complaint to embrace state tort law claims against Alvarez. Once the federal question claims were dismissed, there was no longer any basis to assert pendent party jurisdiction over these claims. These claims were properly dismissed