TORRUELLA, Circuit Judge,
dissenting.
I am forced to dissent because the majority contravenes Supreme Court doctrine established in United States v. Kubrick, 444 U.S. 111, 118, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) and longstanding circuit precedent interpreting Kubrick. See Gonzalez v. United States, 284 F.3d 281, 289 (1st Cir.2002); Attallah v. United States, 955 F.2d 776, 780 (1st Cir.1992). The majority’s “causal connection” approach runs contrary to the doctrine established in those cases because it eliminates the requirement that before a statute of limitations runs on an FTCA claim, a plaintiff must be aware both of the existence of his injury and “the facts of causation.” Kubrick, 444 U.S. at 122, 100 S.Ct. 352.
In this case, the appellants could not possibly have discovered the medical cause of Edward Skwira’s death before June 8, 1998. As is established by the record, the government itself was unable to discern the cause of Skwira’s death until it invented special techniques and protocols for detecting excess levels of epinephrine in the body. Until June 8, 1998 — the date when the government first informed appellants about “the facts of causation” — the Skwira’s were in no position to know how Skwira had died. Thus, the appellants were in the position described by the Supreme Court as one warranting delayed accrual — that is, where “the facts of causation [are] in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain.” Id. at 122, 100 S.Ct. 352 (emphasis added).
The standard adopted by the majority improperly allows a claim to “accrue” before a reasonably diligent plaintiff could possibly have discovered the medical or physical cause of his injury. According to the majority, a discovery rule claim “accrues” once a plaintiff knows or should, in the exercise of reasonable diligence, know “(1) the fact of injury and (2) the injury’s causal connection with the government.” Maj. Op. at 77. Thus, once injury is known, the statute of limitations begins running as soon as the plaintiff discovers sufficient information to determine that his injury is “probabl[y]” “connected with some act of the government.” Maj. Op. at 78, 80. The “causal connection” approach, in other words, puts a premium on the *87 identity of the defendant: so long as a plaintiff might determine who injured him, the statute of limitations starts to run against a plaintiff, even if he could not, in the exercise of reasonable diligence, discover what injured him, or how he was injured.
This case presents no basis for implementing a novel accrual standard. The majority alludes to (1) confusion in the standards articulated by Kubrick and its progeny, and (2) the unique nature of non-medical malpractice cases as potential justifications for implementing a new accrual standard. Maj. Op. 75-77. However, looking at Kubrick and its progeny, I think it is clear that our discovery rule jurisprudence, while less than crystal clear, is well established enough that the majority’s decision to depart from Kubrick’s accrual standard in favor of the “causal connection” standard is unwarranted. Moreover, there is nothing in the record that distinguishes this case from past malpractice and wrongful death discovery-rule cases which have been considered under our well-established accrual standard.
A. Kubrick and its Progeny
While Kubrick left open some questions regarding the parameters of the discovery rule, the core holding of Kubrick is clear and has been repeatedly applied by this and other circuits in both medical malpractice and non-medical malpractice contexts.
The Kubrick Court established that accrual does not occur before the plaintiff “knows both the existence and the cause of his injury.” Kubrick, 444 U.S. at 113, 100 S.Ct. 352 (emphasis added). The Court clearly distinguished between “a plaintiffs ignorance of his legal rights” (which will not halt accrual) and knowledge “about the facts of causation” (which is required to trigger accrual). Id. at 122, 100 S.Ct. 352. Thus while accrual will not wait for a plaintiff to discover that his injury was negligently inflicted, it is clear that a claim cannot accrue before a plaintiff is or should be aware of the existence and cause of his injury. Under Kubrick, knowledge of an injury and its cause constitutes “the factual predicate for [the] claim.” Id. at 118, 100 S.Ct. 352. Thus, as the Fourth Circuit has stated, “[t]he clear import of Kubrick is that a claim accrues within the meaning of [the FTCA] when the plaintiff knows or, in the exercise of due dilligence, should have known both the existence and the cause of his injury.” Gould v. U.S. Dep’t of Health and Human Services, 905 F.2d 738, 742 (4th Cir.1990).
Even if Kubrick ultimately left open questions regarding claim accrual, this Court has repeatedly construed Kubrick as holding that a claimant’s knowledge of the existence and cause of his injury is the baseline knowledge required to trigger discovery-rule accrual. In Gonzalez, we recently clarified that Kubrick meant that “[o]nce a plaintiff knows of the injury and its probable cause, he/she bears the responsibility of inquiring among the medical and legal communities about whether he/ she was wronged and should take legal action.” Id. at 289 (citing Kubrick). Our holding in Gonzalez is consistent with all of our prior discovery rule cases. See, e.g., Nicolazzo v. United States, 786 F.2d 454, 454 (1st Cir.1986) (citing Kubrick’s holding that in medical malpractice suits, “the claim accrues when a plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the existence and cause of his injury”); Rivera Fernandez v. Chardon, 702 F.2d 29, 32 (1st Cir.1983) (finding that the Kubrick Court concluded that “the limitations period began to run when the plaintiff knew of the existence and the cause of his injury”); Lazarini v. United States, 215 F.3d 1312, 2000 WL *88 231241 (1st Cir. Feb.17, 2000) (per curiam) (citing Kubrick for the proposition that discovery-rule claims accrue “when the plaintiff knows both the existence and the cause of his injury”); Fisher v. United States, 959 F.2d 230, 1992 WL 63516 at *4 (1st Cir. Apr.1, 1992) (per curiam) (“The Supreme Court has determined that a plaintiff must know the ‘critical facts’ of his injury and its cause in order for his cause of action to accrue under the Federal Tort Claims Act.”).
The majority’s interpretation of Kubrick also departs from the discovery rule standard as articulated by nearly every other circuit court. See, e.g., Massey v. United States, 312 F.3d 272, 276 (7th Cir.2002) (finding that the Kubrick Court held that a claim under the FTCA accrues when the plaintiff knows both the existence and cause of the injury); Garza v. United States Bureau of Prisons, 284 F.3d 930 (8th Cir.2002) (same);[20] Winter v. United States, 244 F.3d 1088, 1090 (9th Cir.2001) (same); Gould, 905 F.2d 738 at 742 (4th Cir.1990) (same); Barren by Barren v. United States, 839 F.2d 987 (3d Cir.1988) (same); Chamness By and Through Chamness v. United States, 835 F.2d 1350, 1353 (11th Cir.1988); Arvayo v. United States, 766 F.2d 1416, 1419 (10th Cir.1985) (same).[21]
The majority is not free to jettison the “causation” requirement at this stage. Although the discovery rule standards applied in the past may differ slightly from one another,[22] these nominal differences do not justify wiping the slate clean and imposing a more rigorous accrual standard for plaintiffs to satisfy. In sum, it is firmly established that the baseline threshold for accrual under the discovery rule is knowledge of an injury and its cause. Unless the “causal connection” standard satisfies this threshold, it is an unwarranted departure from Circuit precedent.
B. What Constitutes the “Facts of Causation?”
The majority’s emphasis on who caused Skwira’s injury, rather than how he was injured or what injured him is seriously misguided. In light of the long line of cases requiring knowledge of “the facts of causation” to trigger accrual, the only way to sustain the majority’s approach would be to argue that its “causal connection” standard actually satisfies this Court’s “causation” requirement. However, this argument would require us to construe the *89 term “cause” in a manner inconsistent with legal precedent.
Discovery of the cause of one’s injury does not mean knowing who is responsible for it, or even discovery of the alleged tortfeasor’s “probable connection” to the injury; rather, an injury’s “cause” is known when the immediate physical basis for the injury is discovered. Dyniewicz v. United States, 742 F.2d 484, 486 (9th Cir.1984). That is, “cause” means the immediate cause of injury “from a medical point of view,” and not the legal identity of the alleged tortfeasors. Gould, 905 F.2d at 748 n. 2; see also Davis v. United States, 642 F.2d 328, 331 (9th Cir.1981). This is evident from Kubrick itself, where the Court determined that the critical causative fact that set the statute of limitations running was that Kubrick was aware of the fact that the administration of an antibiotic was the medical cause of his injury. Kubrick, 444 U.S. at 118, 100 S.Ct. 352. Thus, the majority’s claim that its “causal connection” approach is grounded in the logic of Kubrick is unfounded; as one circuit has noted, “[njowhere in Kubrick is any reference to the legal identity of the tort-feasor.” Gould, 905 F.2d at 743; see also Gibson v. United States, 781 F.2d 1334, 1344 (9th Cir.1986) (knowledge of “cause” is knowledge of immediate physical cause, not knowledge of involvement and culpability of federal agents).
C. Applying Kubrick “Outside the Medical Malpractice Context”
Without a trace of irony, the majority also claims that it is free to implement its novel “causal connection” standard because Skwira’s injury occurred “outside of the medical malpractice context.” Maj. Op. at 77. That is, because Nurse Gilbert intentionally injected Skwira with epinephrine, the appellants’ claims against the United States merit consideration under a different standard than that applied to other malpractice cases. Since no such standard has been clearly articulated yet by this Circuit, the majority allows itself to invent a new one.
Even if this distinction were generally appropriate, the facts in this case do not permit us to treat it as a purely non-malpractice case. This case involves a medical professional administering an excessive dose of a toxic substance to a patient undergoing treatment at a government hospital. That the drug was administered with the intent to kill does not itself distinguish this from similar cases involving latent injury or causation, or other cases arising from a breach of the doctor-patient relationship. Cf. Ware v. United States, 626 F.2d 1278, 1284 n. 4 (5th Cir.1980) (“Courts created the medical malpractice [discovery rule] to protect those who suffered damage arising out of both a specialized area, medicine, and a unique relationship, doctor-patient.”). Accordingly, the district court correctly noted, “the facts of this case, charging hospital based negligence or malfeasance, make it functionally identical to a malpractice case.” Cutting v. United States, 204 F.Supp.2d 216, 224 (D.Mass.2002).
Second, the rationale for delaying accrual in medical malpractice cases is entirely appropriate here. As the Supreme Court has noted, “the cry for a discovery rule is loudest” in malpractice cases, because “the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very hard to obtain.” Rotella v. Wood, 528 U.S. 549, 555-56, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (quoting Kubrick, 444 U.S. at 122, 100 S.Ct. 352). Medical malpractice cases enjoy their privileged discovery-rule status not because they are unintentional; we have historically treated these cases differ *90 ently because they often involve hidden, complex, and unknown factors which an injured plaintiff would not ordinarily be expected to grasp. In this case, where the facts about Skwira’s injury were in the control of the government, unavailable until 1998, and impossible to obtain, the rationale for applying the discovery rule is identical to a case of pure medical malpractice. The latent and complex medical causation issues in this case should have led the majority, like the district court below, to treat the appellants’ claims under the traditional rubric of medical malpractice discovery rule cases.
D. Applying the Existing Standard to Skwira
I respectfully submit that when the proper standard is applied to these facts— that is, when we attempt to ascertain when we could first charge appellants with knowledge of the existence and cause of Skwira’s injuries — this case is a much closer one than it appears in the majority opinion.
The plaintiffs, like the government agents investigating Skwira’s death, could not possibly have discovered that Skwira died from the administration of a drug until 1998. And unlike the plaintiffs in Kubrick, it would have been futile for the Skwiras to inquire “among doctors with average training and experience in such matters to have discovered that [they] probably had a good cause of action.” Kubrick, 444 U.S. at 123, 100 S.Ct. 352. This fact is significant because “[ojrdinarily, a plaintiff cannot be expected to discover the general medical cause of his injury even before the doctors themselves are able to do so.” Chamness, 835 F.2d at 1353 (quoting Rosales v. United States, 824 F.2d 799, 805 (9th Cir.1987)).
The only causative facts in the appellants’ possession were knowledge that Skwira’s death certificate was incorrect and that the hospital and its employees were the subject of an investigation. However, the sum of this information does not constitute any knowledge regarding the physical cause of Skwira’s injury. At most, the plaintiffs knew that everything they thought they knew about Skwira’s death was wrong.[23]
The opinion does not cite a single case in support of its harsh conclusion that a claim may accrue before plaintiffs could possibly obtain information about an injury’s medical or physical cause. It cites no cases to support treating the appellants’ claims any differently from other medical malpractice claims. It disregards the standards articulated by this Court in Attallah,[24] 955 F.2d *91 at 780 and Gonzalez, 284 F.3d at 289. Respectfully, it is only by adopting a nebulous “causal .connection” test that the panel can make any headway; under Kubrick’s own “facts about causation” requirement, it would be extremely difficult on this record to show that appellants had sufficient knowledge of the medical cause of Skwira’s death.
Knowledge of an injury’s cause is a “critical fact,” without which a claim cannot accrue. By reducing the “causation” requirement to mean only a “probable connection between the injury and the defendant,” the majority puts its thumb on the scale and transforms our accrual standard into one too strict for plaintiffs whose injury involves latent or complex causes. In such cases, “considerable enquiry and investigation may be necessary before [a plaintiff] can make a responsible judgment about the actionability” of his claim. Rotella v. Wood, 528 U.S. at 556, 120 S.Ct. 1075.
The plaintiffs’ delay in filing their administrative claim was justified by the impossibility of discovering the cause of Edward Skwira’s injury. Because the appellants filed that claim less than two years after discovering the cause of Skwira’s injury,, I do not believe their claim to be barred by the statute of limitations.' I respectfully dissent.

.The majority’s citation of Garza to support rejecting the “causation” standard and adopting the proposed "causal connection” standard in its place is inconsistent with that opinion’s actual holding. In Garza, the Eighth Circuit held that a "cause of action still accrues when the existence of an injury and its cause are known.” Garza, 284 F.3d at 935. While the Garza court did imply that under some circumstances a claim would accrue when the plaintiffs knew the "identity of alleged tortfeasors as federal employees,” it imposed this standard in addition to, not in place of, the traditional "causation” requirement. See id. (suggesting that accrual might be delayed until the plaintiff knows the legal identity of the tortfeasor only if government agents mislead or hide the tortfeasor’s identity).

. To my knowledge, no case besides Diaz v. United States, 165 F.3d 1337 (11th Cir.1999) has dispensed with the "causation” requirement in the manner proposed by the majority.

. For instance, in Gonzalez, this Court at one point states that accrual occurs when a plaintiff knows of his injury "and its probable cause,” 284 F.3d at 289, and at another requires knowledge of "an injuiy and its potential cause.”, Id. at 291 n. 10 (emphasis added). Though I am sure the difference between "probable” and “potential” would provide grist for the mill of an opportunistic litigator, it does not negate our long-standing requirement that accrual is delayed until a plaintiff is aware of the existence and cause of his injury.

. The majority makes much of "[t]he family's subjective beliefs,” which it gleans from deposition and trial testimony. Maj. Op. at 80. Although the majority ostensibly cites the Skwiras’ "subjective beliefs” only to "reinforce[] the correctness of [its] conclusion,” id., its reliance on what it believes the appellants subjectively knew is inappropriate. The discovery rule test is, of course, an objective one, Gonzalez, 284 F.3d at 288; Attallah, 955 F.2d at 780, and our assumptions about the state of mind of the appellants are wholly irrelevant as to when the appellants’ claim should have accrued. Moreover, none of the family’s concerns amount to more than their generalized suspicion about events at the hospital. And as we have held, "generalized suspicions unsupported by medical interpretations do not establish sufficient 'awareness’ to set [the] limitations period running when [the] condition involves complex medical causality.” Bath Iron Works Corp. v. United States Dep’t of Labor, 336 F.3d 51, 2003 WL 21665024 at *6 (1st Cir. July 17, 2003) (quoting Jasinskas v. Bethlehem Steel Corp. 735 F.2d 1, 5 (1st Cir.1984)). Inclusion of subjective elements into our discovery rule inquiry will only serve to confuse lower courts seeking to apply the standard announced today.

. In Attallah, we concluded that "the principles established by the discovery rule warrant a delayed accrual ... since the appellants did not know ... of [the tortfeasor’s] criminal *91 acts until the time of their indictment.” 955 F.2d at 780. We then cited the following factors to justify our decision to delay accrual: (1) the plaintiffs could not have known the factual basis for their claim; (2) the plaintiffs had "no other information” other than misleading information provided by law enforcement; and (3) the police did not have sufficient information to bring charges against the murderers until 5 years after the crime. Id. at 780. These factors are all present in some form in the Skwira case, and yet the majority does not give them any consideration.